# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-00652-SCT

*FREDDIE WALKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/8/2002 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | PHILLIP BROADHEAD |
| | CARL D. GORDON |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ELEANOR JOHNSON PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 05/27/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Freddie Walker was convicted of statutory rape and sentenced to serve two concurrent life sentences in the custody of the Mississippi Department of Corrections. The trial court denied Walker's request for a new trial or in the alternative judgment notwithstanding the verdict. On appeal, he raises three issues: (1) that the trial court erred in admitting into evidence a towel containing semen which had not been scientifically identified as his; (2) that the trial court erred in admitting recordings of his telephone

conversations with the victim; and (3) that the verdict was based on insufficient evidence and was contrary to the weight of the evidence.

¶2.	Finding that the admission of the towel violated the M.R.E. 403 unfair prejudice standard, we reverse and remand for a new trial.

## FACTS

¶3.	Freddie Walker ran a nightly janitorial services business in Jackson.  In January of 1999, he met "Mother" and they developed a friendship, which was both professional and intimate.  "Mother", a widow since 1995, cared for her four children in addition to providing nightly cleaning services.  Because of his positive rapport with the children, Walker and "Mother's" relationship evolved to a point where he was furnished a key to their home, which he frequented.

¶4.	In mid-April 2000, school officials contacted "Mother" and informed her of rumors circulating that Walker had sexually assaulted M.M., her thirteen-year-old daughter.  When confronted, both Walker and M.M. denied that such attacks occurred.  Nevertheless on April 21, 2000, "Mother" had M.M. examined by Dr. Harriet Hampton, a specialist in pediatric and adolescent gynecology.  The examination proved inconclusive as to vaginal penatration.   Dr. Hampton testified that during this visit she was informed by M.M. that she had been previously sexually abused by her older brother ("Brother") who lived in the house during the period that the offenses, which are the subject of this appeal, were alleged to have occurred. Believing the rumors untrue, "Mother" and Walker continued their relationship.

¶5.	In August of 2000, "Mother" became concerned about her children's activities, especially those of "Brother", and "bugged" the family telephone line.  To her dismay, she incidentally recorded several sexually suggestive conversations between Walker and M.M. Immediately, "Mother" contacted the Jackson Police Department and had M.M. examined by a physician.   On August 23, 2000, Dr. James

Cloy conducted a pelvic examination and found evidence of vaginal penetration and no intact hymen. Walker was questioned by the authorities and subsequently arrested.

¶6.     Walker, 45, was prosecuted on two counts of capital rape.  However, he allegedly sexually assaulted M.M. six times from May of 1999 until August 15, 2000.  During the trial, several witnesses testified for the prosecution, including: Mother, M.M., Dr. Cloy, Dr. Hampton, and Detective Kim Harrison of the JPD child protection unit.

¶7.     The prosecution's most critical pieces of evidence were the recorded conversations and a towel, which allegedly had Walker's semen on it. In the recorded conversations, Walker told M.M. that she was "sexy" and "appealing" and discussed kissing her. Prior to trial, the trial court denied Walker's motion in limine to exclude the taped conversations.

¶8.     With regards to the towel, the prosecution received it from "Mother" in August of 2000.  It was alleged that following one the attacks in the family's living room, Walker used the towel to clean himself. Seeing this, M.M. went upstairs only to return after Walker had left.  M.M. then retrieved an additional towel from "Mother's" bedroom, which she wrapped the soiled towel in and held until giving it to "Mother" in August of 2000. This incident was alleged to have occurred in August of 1999, but was not made part of the indictment.

¶9.     Prior to trial, Walker filed a motion to suppress the towel.  He argued that, without any confirmation that the semen was his, there was no connection between the towel and him and that its admission would violate his right to a fair trial.  After due consideration, the trial court denied the motion.

¶10.    Walker raises several issues on appeal.

**DISCUSSION**

3

**I.	WHETHER THE TRIAL COURT ERRED BY ADMITTING A TOWEL AS EVIDENCE OF AN ALLEGED PRIOR BAD ACT PURSUANT TO M.R.E. 401, 402, 403 AND 404(B).**

¶11.	Relying on M.R.E. 404(b), the State argues that the towel was admitted because as evidence to a similar, prior offense it corroborated the charges in the indictment; showed Walker's lustful disposition toward M.M.; and showed the probability that he committed the crime. Further, the State maintains that the probative value outweighs any prejudicial effect and that therefore there is no M.R.E. 403 violation.

¶12.	"A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Jefferson v. State*, 818 So.2d 1099, 1104 (Miss. 2002) (quoting *Fisher v. State*, 690 So.2d 268, 274 (Miss. 1996)). *See also Hill v. State*, 774 So.2d 441, 444 (Miss. 2000); *Crawford v. State*, 754 So.2d 1211 (Miss. 2000); *Gilley v. State*, 748 So.2d 123, 126 (Miss. 1999); *Hughes v. State*, 735 So.2d 238, 269 (Miss. 1999).

¶13.	M.R.E. 404 provides, in part:

> **(b) Other Crimes, Wrongs, or Acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶14.	The decision of the trial court to admit the towel was based on *Crawford v. State*, 754 So.2d 1211, 1220 (Miss. 2000); *Hicks v. State*, 441 So.2d 1359 (Miss. 1983); and *Barbetta v. State*, 738 So.2d 258 (Miss. Ct. App. 1999), which stand for the general rule that in the prosecution of sexual offenses, evidence of prior sexual acts between the accused and the victim is admissible to show the accused's lustful, lascivious disposition toward the particular victim, especially in circumstances where the

4

victim is under the age of consent. *See Crawford*, 754 So.2d at 1220; *Hicks,* 441 So.2d at 1361; *Barbetta,* 738 So.2d at 260.

¶15. Though M.M. testified regarding how she retrieved the towel, the prosecution's failure to positively connect the semen on the towel to Walker renders the towel inadmissible. To simply admit such a towel, without employing the available scientific means for authentication, fails the unfair prejudice standard set forth in M.R.E. 403, infringed upon Walker's right to a fair trial, and served only to bolster the testimony of the prosecution's witnesses. *See generally Crawford*, 754 So.2d at 1220 (Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass). With no direct link to the accused, a soiled towel would tend to mislead, confuse, and incite prejudice in the jury, especially in a capital rape trial involving a 13-year-old victim.

¶16. Furthermore, the towel was not properly authenticated. M.R.E. 901(a) provides:

> **(a) General Provision**. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"Under M.R.E. 901, authentication and identification are conditions precedent to admissibility. Generally these serve simply to establish that a matter is what it is claimed to be." *Jones v. State*, 798 So.2d 592, 593 (Miss. Ct. App. 2001); *See also Robinson v. State*, 733 So.2d 333, 335 (Miss. Ct. App. 1998)("Testimony that a particular material is a controlled substance is of no relevance unless the State also proves the defendant's connection to that particular substance.") Without confirming whether the semen on the towel indeed belonged to Walker, the prosecution submitted the towel as a towel stained with his semen.

¶17. Not addressed by either party or the trial court was this Court's opinion in *Winston v. State*, 754 So.2d 1154 (Miss. 2000). On certiorari, this Court affirmed in part and reversed and rendered in part a

decision by the Court of Appeals affirming the conviction of capital rape. *See also* **Winston v. State**, 726 So.2d 197 (Miss. Ct. App. 1998). Relevant to the instant appeal is that though there was no physical evidence collected by the rape kit or otherwise linking Winston to the victim, the conviction was affirmed based on the testimony of the victim, her relatives, the responding policeman and the examining doctor **Winston**, 754 So.2d at 1156.[1] Like our decision in **Winston**, we do not suggest today that physical evidence is needed to uphold a conviction of capital rape. **Winston**, 754 So.2d at 1156.

¶18.     In **Winston**, the child testified she stopped by Winston's home because he was supposed to provide her lunch. While eating, Winston began fondling her and carried her off to his bedroom, where he forced her to engage in various sexual acts. At some point, members of the victim's family, including her mother, came to his home looking for the child. Winston initially claimed that the child was no longer there, however after the child's voice was heard from the back of the house, he produced the girl. Because she was crying and her clothes were disheveled, the mother was suspicious and asked the victim if Winston had touched her. Though she initially denied it, after being slapped by her mother the victim admitted to her family members that he had molested her. At this time, the police were called to Winston's home. As did the members of the victim's family, the officer later testified that the victim's pants and shirt were open and that her breasts were exposed. The officer drove the victim to the hospital where the emergency room physician administered a rape examination kit. The doctor testified that from the examination he determined that the victim had engaged in intercourse within the two preceding hours.

¶19.     In **Winston**, the results from the crime lab tests on the rape kit did not link Winston to the victim. **Winston**, 754 So.2d at 1155. Unlike **Winston**, no rape kit was conducted on M.M. because of the time

---

[1] However, this Court noted that the Court of Appeals erroneously stated that Winston was linked by blood-type matching to the semen sample taken from the victim. *Id*. at 1156.

lapse between the alleged molestation and the time it was reported. Other than the testing for semen, no lab tests were conducted on the towel.

¶20.    Detective Kim Harrison, the lead investigator, testified that the Jackson Police Department Crime Lab received both the towel and samples of blood taken from Walker. Detective Harrison testified that no blood samples were taken from other individuals. Katina Robins, who specializes in forensic serology at the JPD crime lab, testified that she secured a sample of the semen present on the towel and placed it in a freezer pack to be preserved for further serological testing. However, neither witness could provide a reason why, despite their efforts to obtain and preserve samples from the defendant and the towel, that no further serological testing was conducted.

¶21.    We are not faced with a situation where the victim was found in the suspect's house under suspicious conditions, coupled with his suspicious conduct, and then immediately driven by a police officer to the hospital where a rape kit was administered. Though the rape kit did no disclose physical evidence to link Winston to the rape, the physician concluded, based on his examination, that the victim had engaged in intercourse within the preceding two hours. *See id*. Here there was no immediate investigation of the reported incidents.

¶22.    In the instant case, the need for scientific testing is clear. First, there was testimony that at one point the child claimed to have been sexually assaulted by her older brother. Second, the sexual attacks charged in the indictments allegedly occurred in *June and August 2000*. However, the semen on the towel resulted from a sexual attack in *August of 1999*.

¶23.    Because the prosecution failed to link the semen on the towel to Walker, we find that the admission of the towel violated M.R.E. 403 and reverse. In accordance with the suggestions of the prosecution's criminologist, further scientific testing is necessary.

## II. WHETHER THE TRIAL COURT ERRED BY REFUSING TO GRANT WALKER'S MOTION IN LIMINE SEEKING TO PROHIBIT THE INTRODUCTION OF AUDIOTAPE CONVERSATIONS IN VIOLATION OF M.R.E. 401, 402, AND 403.

¶24. Walker claims that during the trial the prosecution played several irrelevant tape recorded conversations which unfairly influenced the jury and prejudiced the defense. Relying on our decision in *Ragin v. State*, 724 So.2d 901 (Miss. 1998), Walker maintains that prosecution failed to satisfy M.R.E. 401's relevancy requirement and that the evidence violated unfair prejudice limitation set forth under M.R.E. 403. The Court disagrees.

¶25. In *Ragin*, we affirmed the trial court's decision to admit audio tapes and transcripts concerning a drug sale. 724 So. 2d at 903-04. Discussing the two requirements for the admissibility of the audio tapes, the Court stated:

> We have announced that the prosecution must prove the recordings are relevant pursuant to Miss. R. Evid. 401 as well as authentic as required by Miss. R. Evid. 901 before they are deemed admissible.
>
> In *Middlebrook v. State*, 555 So.2d 1009 (Miss.1990) we held the prosecution is required to lay a substantial predicate before a tape recording may be received into evidence. First, the recording must pass the relevancy test of Rule 401; i.e., it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401.

*Id.* at 903. As to the second requirement, the Court noted that M.R.E. 901 will be "satisfied if evidence is introduced which is 'sufficient' to support a finding that the matter in question is what its proponent claims." *Id.*

¶26. Here, the recorded conversations, laden with sexual overtones, are clearly relevant as evidence of Walker's disposition towards M.M. This satisfies the M.R.E. 401. As for M.R.E. 901, Walker tacitly authenticated the conversations himself.

¶27. When questioned by the authorities, Walker explained through his conversations with M.M. he sought to raise her self-confidence and by telling her that she was "sexy" and "appealing" he wanted her to know that others found her attractive. In light of such explanation, the Court finds that the tapes are what they were purported to be (i.e. conversations between Walker and M.M.) and we reject his challenge to their authenticity.

¶28. Whether the evidence presented satisfies Rules 401 and 901 is a matter left to the discretion of the trial judge. M.R.E. 104(a). *See also Ragin*, 724 So.2d at 903. Without an abuse of discretion, his decision will be upheld. *Id.* (citing *Stromas v. State*, 618 So.2d 116, 119 (Miss. 1993)). *See Butler v. State*, 592 So.2d 983, 984 (Miss. 1991).

¶29. For these reasons, this issue is without merit.

> **III. WHETHER THE TRIAL COURT ERRED BY DENYING A DIRECTED VERDICT OR IN THE ALTERNATIVE DENIED A MOTION FOR NEW TRIAL AND J.N.O.V. BECAUSE THE EVIDENCE WAS NOT SUFFICIENT TO SUSTAIN A JURY VERDICT.**

¶30. Because issue one is dispositive, we need not address this issue.

## CONCLUSION

¶31. Because the prosecution failed to connect the semen on the towel to Walker, we find that the towel's probative value was substantially outweighed by the danger of unfair prejudice. We reverse the trial court's judgment and remand this case for a new trial consistent with this opinion.

¶32. **REVERSED AND REMANDED.**

**SMITH, C.J., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COBB, P.J. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN JOINED BY COBB, P.J., AND EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**EASLEY, JUSTICE, DISSENTING:**

¶33.    In my view, the majority totally ignores the overwhelming evidence in this case. Therefore, I respectfully dissent.

I.

¶34.    Walker contends that the trial court erred by admitting into evidence a towel with his alleged semen on it. He asserts various arguments, such as, (1) the testimony concerning the towel is uncorroborated; (2) the towel is not linked to him; (3) the trial court failed to make an on the record finding that the testimony was more probative than prejudicial pursuant to M.R.E. 403; (4) the towel was not admitted into evidence under a specific exception of 404(b); and (5) the trial court failed to sua sponte instruct the jury of the limited admissibility of the evidence. After hearing arguments from the defense and prosecution, the trial court ruled that the towel could be admitted into evidence.

¶35.    "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Jefferson v. State*, 818 So.2d 1099, 1104 (Miss. 2002) (quoting *Fisher v. State,* 690 So.2d 268, 274 (Miss. 1996)).

¶36.    Walker's argument is without merit. The trial court heard arguments concerning the relevancy of the towel and whether the admission of the towel was more probative than prejudicial. Included in these arguments was the assertion that the testimony about the towel was uncorroborated and the towel was not linked to Walker. Relying on legal arguments and case law analysis, which the trial judge considered, cited

at length and applied to the facts of this case, he determined that the towel was relevant and more probative than prejudicial. Contrary to Walker's assertion, the State cited specific reasoning pursuant to M.R.E. 404(b) for the admission of the towel. It is true that the trial court failed to sua sponte instruct the jury on the limited admissibility of the evidence. However, the trial court did give an instruction on the weight and credibility of witnesses and evidence. Walker, also, did not request a limiting instruction by the trial court. The error, if any, is harmless.

¶37. At a pre-trial suppression hearing a detective and serologist testified about the towel. The towel came from the girl's house and allegedly was used by Walker to wipe himself after ejaculation following an unindicted incident that occurred in August 1999.[2] The girl told Detective Harrison about the towel. While the girl was unable to state the number of incidents, she described a few occasions of vaginal and penile intercourse. It appeared that there was a series of incidents between Walker and the girl. The detective believed that the girl kept the towel to show the police and corroborate the alleged sexual incidents between Walker and her. Detective Harrison went to the girl's home and collected the towels from her mother.

¶38. A crime lab serologist, Katina Robbins, testified that semen of unknown origin was present on the towel. The lab had a blood sample from Walker. However, there was no test performed to compare the semen sample to Walker's blood sample. Therefore, the semen and Walker's blood sample could not be connected.

¶39. The defense argued that the admittance of the towel was irrelevant and more prejudicial than probative. The prosecution argued as follows:

---

[2] Walker had a two-count indictment for statutory rape that occurred in the summer of 2000.

There is a clear line of authority in the state which allows the admissibility of such evidence in sex crimes. The leading case on point is Barbetta versus State. I will cite it at 738 So.2d 258.

And according to Mississippi case law, and I am referring directly from the case on page 259, there is a clear line of cases that authorize the Court and prosecution of sexual offenses to allow evidence of other prior sexual crimes of the accused. Accordingly, **evidence is generally held to be admissible which shows or tends to show prior offenses of the same kind committed by the defendant with the prosecuting witness.**

**The Court assigns various reasons for the admission of this evidence, such as we attempted to show corroboration of the offense charged, to show the intimate relation between the parties, the lustful disposition of defendant toward the prosecuting witness, and the probability of his having committed the offense charged.**

This Court reiterated this same reasoning in Crawford versus State, which is cited at 754 So.2d 1211, and [in] which it says that in all these cases the Court has held that this type of evidence, evidence of other sexual offenses occurring between the defendant and the victim, is admissible in this limited situation. And in this situation it is.

Detective Harrison showed that through her testimony that this was a series of events that occurred between the defendant and the victim, that it was not an isolated incident. We are going to need this - - she said that she gave this to her, and it was her opinion, to corroborate that there had been sexual relations between the two of them.

Therefore, the evidence is admissible to prove that he had [a] lustful, lascivious disposition towards this particular victim, especially in the incident where we have a child under the age of consent.

\*    \*    \*    \*

Therefore, the State would argue that the defense request to suppress that evidence should be denied. Although he is not charged in an indictment with any other offenses other than the two alleged incidents, **they are part of a series of ongoing incidents, and that is part of the State's proof in this case as to the motive, plan and preparation under 404 (b) which says that this evidence is relevant and is not prejudicial to the defendant**.

(emphasis added). The trial court made an inquiry into the probative value of the evidence. The trial judge

and prosecution continued the discussion and stated the following:

12

| | |
|---|---|
| **The Court**: | All right. Ms. Peterson, the Court does have an inquiry here. How is this evidence probative against this defendant when there is no evidence thus far that the towel is connected with this defendant. |
| **Ms. Peterson [State]**: | Your Honor, in the State's case we will also be presenting evidence in which the defendant had stated that he did not have sexual relations with any person in this household. This victim is going to testify to several incidents that occurred between herself and the defendant. And she brought this in an effort to prove to someone that sexual relations had occurred. |
| | As to the credibility of that, that would be a question for the jury to decide as to whether or not her preserving that was an intent to prove the other sexual incidents. And for that reason the State is asking that the towel be admitted for the limited purpose of her saying I preserved this because this is what happened to me. |

¶40.    The trial court took the arguments under advisement and reviewed case law prior to making its decision. In its analysis, the trial court addressed the arguments that counsel made concerning relevancy, probative value versus prejudicial effect, and Rule 404(b) exceptions. In addition, the trial court cited a line of case law and gave a lengthy on-the-record analysis of the cases and their relevance to the issue of the admissibility of the towel.

¶41.    The trial court specifically cited ***Barbetta v. State***, 738 So.2d 258 (Miss. Ct. App. 1999) (testimony concerning prior touching of victim's breasts and inside her shorts was admissible as a lustful disposition of victim); ***Crawford v. State***, 754 So.2d 1211 (Miss. 2000) (testimony concerning prior sexual contact with victim for over six months was admitted); and ***White v. State***, 520 So.2d 497 (Miss. 1988). In its decision, the trial court stated in part:

> And finally in discussing this issue, the Court in the Crawford case noted, and having referred to a number of Mississippi cases which it considered the same or substantially the same issue, the Court held that such evidence is admissible in this limited situation to show

appellant's lustful, lascivious disposition toward his particular victim, especially whereas here the victim was under the age of consent.

And the court said finally that most recently this Court has again held that it was not error to permit testimony of previous sexual offenses between the appellant and his victim, citing Woodruff versus State. It goes on to say there's nothing in this case to distinguish it from any of these previous cases. Therefore, assignment of error is without merit in the Crawford case.

The State in this case, the subject case, is taking the position that it is - - that this prior sexual act with the prosecuting witness in this case is relevant to prove the material issue of - - other than the defendant's character, and that the probative value of the evidence outweighs the prejudicial effect.

Based upon the Barbetta decision and the Crawford decision, the Court finds that the evidence in this case would be admissible. And therefore, the motion to suppress it will be denied.

¶42. The trial court heard and considered Walker's argument relating to corroboration of the testimony and the link between Walker and the towel. At the hearing, Detective Harrison testified that in her opinion, the girl kept the towel to corroborate her allegations of rape by Walker. Also, the State argued that the towel aided in proving a series of sexual incidents between Walker and the girl. The trial court ultimately concluded that the towel was admissible despite Walker's arguments.

¶43. The State asserted that the purpose for admitting the towel was to show the lustful, lascivious disposition of Walker toward the child. The prosecution also argued that towel was to corroborate the sexual incidents between Walker and the girl and that these were are part of a series of ongoing incidents which proved motive, plan and preparation under 404 (b).

¶44. This Court held in *Webster v. State*, 817 So.2d 515, 520 (Miss. 2002), that "[u]sually, evidence of another crime is not admissible. However, this Court has held that evidence of a prior crime or act may be admitted to show identity, knowledge, intent, or motive." (citations omitted). *See also* M.R.E. 404(b). In *Crawford*, this Court held that:

Determining whether to admit evidence under Rule 404(b) requires a two part analysis. The evidence offered must (1) be relevant to prove a material issue other than the defendant's character; and (2) the probative value of the evidence must outweigh the prejudicial effect." *Puckett*, 737 So.2d at 365. Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass. *Jenkins v. State*, 507 So.2d 89, 93 (Miss.1987). The trial judge correctly admitted testimony of prior sexual acts, which took place over several months prior to Crawford's actually engaging in sexual intercourse with the victim. It was not error to permit testimony of previous sexual offenses between Crawford and the victim, his stepdaughter. *White v. State*, 520 So.2d at 499 (citing *Woodruff v. State*, 518 So.2d 669 (Miss.1988)).

\* \* \* \*

[T]his Court held that such evidence is admissible in this limited situation to show appellant's lustful, lascivious disposition toward his particular victim, especially where, as here, the victim was under the age of consent. Most recently, this Court has again held that it was not error to permit testimony of previous sexual offenses between appellant and his victim. *Woodruff v. State*, 518 So.2d 669 (Miss.1988). There is nothing in this case to distinguish it from any of these previous cases. Therefore, this assignment of error is without merit. *White v. State*, 520 So.2d at 499-500.

The trial judge was correct in admitting the testimony under Rule 404(b) regarding prior sexual contact with Crawford.

*Crawford*, 754 So.2d at 1220-21. In reaching the decision that the towel was admissible pursuant to M.R.E. 404(b), the trial court necessarily considered its relevancy and whether it passed the balancing test pursuant to M.R.E. 403. The trial court specifically cited *Crawford* and its two-part test. I find that the evidence is clearly admissible to prove the lustful intent of Walker, as well as, his and motive and knowledge.

¶45. The majority relies heavily upon *Winston v. State*, 754 So.2d 1154 (Miss. 2000), a capital rape case. Despite the majority's effort to distinguish *Winston* from the facts here, however, I believe the cases to be similar. First, whatever way the facts of each case may be explained, the juries, as the triers of fact, weighed the credibility of the witnesses and heard the testimony of the victims, family members, doctors, and police investigators and convicted both Walker and Wilson. It is true that the victim here had no rape

15

kit performed nor were any police called immediately following the alleged incidents of rape, however, neither or these two facts are essential to a rape conviction. Indeed, the victim in *Winston* had a rape kit performed but it provided no evidence. The majority states that physical evidence is not needed for a capital rape conviction. However, the majority then suggests or harps on the fact that because a rape kit was not performed and because the police were not immediately contacted and investigating the case is therefore lacking evidence to support a conviction. These actions are not necessary for a rape conviction, albeit, having this type of evidence in every rape case may increase the likelihood of rape convictions.

¶46. Further, here the towel was offered to show the lustful, lascivious disposition of Walker toward the child, to corroborate the sexual incidents between Walker and the girl and that these were are part of a series of ongoing incidents which proved motive, plan and preparation under M.R.E. 404 (b). This and other facts as discussed here and in the next issue were enough to support a rape conviction.

¶47. Here, the victim also saw a physician and had a medical exam. In addition, the girl testified that Walker had a key to her home, thus providing access to the girl. The mother testified that Walker stayed at the house many times when she was not present. The mother had taped telephone conversations between Walker and the girl in which he stated the girl was "sexy and appealing" and that he loved her. The jury also heard the conflicting testimony that the girl first stated that her brother raped her. Later, the girl denied having sex with her brother and stated that Walker threatened to hurt her and her family if she told anyone about having sex. Despite this conflict in the testimony, the jury found Walker guilty of rape.

¶48. The fact that the victim here did not immediately run out and have a rape kit performed and call the police as in *Winston*, is not persuasive. This is especially so when the performance of the rape kit did not even produce any substantive results in *Winston*. The two cases seem to boil down to testimony and witness credibility, and in both cases the juries convicted each defendant. Although perhaps helpful for

16

the successful prosecution of a case, a rape victim does not have to immediately run and have a rape kit test, call the police and see a doctor in order to sustain a conviction of rape against an aggressor. Therefore, I find the majority's reliance upon *Winston* unpersuasive as well.

¶49. Walker also argues that the trial court did not sua sponte give a limiting instruction concerning the admissibility of the evidence. It is true that the trial court did not give a specific instruction concerning the limited admissibility of the towel. However, the trial court did grant the Court's instruction, C-1, which addressed the weight and credibility of witnesses. A review of the record shows that Walker did not request a limiting instruction pertaining to the towel. He did request an instruction, D-7, concerning a child's testimony which was refused by the trial court. However, instruction C-1 given by the trial court provided that the jury was to resolve the issue of witness credibility and any conflicts in testimony.

¶50. In *Webster v. State*, 754 So.2d 1232, 1240 (Miss. 2000), this Court applied a harmless error analysis to M.R.E. 404(b) issues of admissibility of evidence. "[W]e hold that harmless error analysis is applicable in cases where the trial court does not sua sponte give the required limiting instruction when M.R.E. 404(b) evidence is admitted." *Id*. This Court concluded that the evidence of Webster's guilt was overwhelming and affirmed on the issue. *Id*. *See also Lofton v. State*, 818 So.2d 1229, 1235 (Miss. Ct. App. 2002). Here, there was overwhelming evidence of Walker's guilt. Therefore, in the face of the overwhelming evidence that Walker had sexual relations with this 13-year-old girl, the error, if any, is harmless. Trial courts should be diligent and continue to give limiting instructions where warranted sua sponte. By the same token, a failure of providing the instruction may be considered harmless error in some cases as in the case at hand.

II.

17

¶51. The trial court did not err by denying a directed verdict or in the alternative denying a motion for new trial and J.N.O.V. since the evidence was sufficient to sustain a jury verdict.

**A. Directed verdict/ J. N.O.V.**

**Standard of Review**

¶52. In *Jefferson v. State*, 818 So.2d 1099, 1110-11 (Miss. 2002), this Court held that the standard of review for denials of motions for directed verdict, judgment notwithstanding the verdict and a request for a peremptory instruction is the same. A directed verdict, judgment notwithstanding a verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial. *Id.* "Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled [the] motion for JNOV." *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993) (citing *Wetz v. State*, 503 So.2d 803, 807-08 (Miss. 1987)). *See also Edwards v. State*, 800 So.2d 454, 462 (Miss. 2001) (The standard of review for a JNOV and a directed verdict are the same and implicate the sufficiency of the evidence. All challenge the legal sufficiency of the evidence. The appellate court properly reviews the ruling on the last occasion the challenge was made in the trial court, when the Circuit Court overruled the JNOV).

¶53. Walker challenges the sufficiency of the evidence. He asserts that he denied having sex with the girl, he was not responsible for the semen on the towel, the semen was not identified as his, and the girl's brother had sex with her. Walker relies on *Crawford v. State* where this Court held that:

> [O]ur case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime.

18

*Crawford v. State*, 754 So.2d 1222 (citing *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998)). In his argument, Walker makes much of the fact that the girl's testimony is allegedly uncorroborated and her testimony contradicted itself.

¶54. The testimony of the girl was not contradictory nor uncorroborated. The mother testified that she met Walker in 1999. Walker spent time at her house with the children. The mother gave Walker a key to the home to store cleaning supplies used in their after hours cleaning service. Therefore, Walker had complete access to the home. The girl also testified that Walker was given a key to the home.

¶55. The mother suspected that there was an improper relationship between Walker and the girl after listening to recorded telephone conversations. The mother described Walker speaking to the girl "not in a fatherly way" after listening to a conversation with the girl. In a few of the conversations, Walker stated that he loved the girl. He also stated that he found the girl "sexy and appealing." The mother also confronted Walker on the telephone about having sex with the girl, which he denied.

¶56. The girl told her mother of sexual incidents that occurred between herself and Walker and her. At the time of these incidents, the last of which occurred in August 2000, the girl was at most 13 years old. A birth certificate confirmed that the girl was born in September 1986. In April 2000, the girl was examined by Dr. Hampton. The doctor could not confirm vaginal penetration nor rectal penetration. However, the doctor did confirm a fissure or tear in the rectum. The girl told Dr. Hampton that her brother had sex with her. The girl later stated that she did not tell the doctor the truth because Walker had threatened her. Dr. Cloy examined the girl on August 23, 2000. He determined that her hymen was not intact which indicated that it was possible that there had been sexual activity.

¶57. Detective Harrison testified to the sexual incidents between Walker and the girl. Detective Harrison stated that at the time of the incidents Walker was 45 years old, approximately 31 years older than the girl.

19

She stated that Walker allegedly wiped himself on a towel after an incident in 1999. The girl wrapped the towel in another towel and the mother later gave the towel to police. Detective Harrison also testified that Walker had sex with the girl in June 2000 and August 2000.

¶58. The girl testified to the towel incident in 1999 and the two rapes in June 2000 and August 2000. During both the rapes, Walker pulled her shorts to the side and put his penis into her vagina. She testified that she was afraid to tell anyone about the incidents because Walker had threatened to hurt her and her family.

¶59. At trial, the girl vehemently denied ever having sex with her brother. She did acknowledge that she told the doctor that she had sex with her brother, however, she stated that Walker had threatened her. She told her mother that she and Walker had not had sex when the mother confronted Walker at school. Again, she stated that she denied the relationship because Walker had threatened her.

¶60. Clearly, Walker had a key and access to the girl's home. The girl was born in September 1986 and was only 13 years old at the time of the last incident in August 2000. Walker was 45 years old and 31 years older than the girl. At trial, the girl positively identified Walker as the person who had sexual intercourse with her. The girl told both the mother and Detective Harrison about all the incidents between Walker and her. The mother had taped conversations between Walker and the girl in which he stated that he loved the girl and that she was "sexy and appealing." Dr. Cloy testified that the girl's hymen was not intact which could indicate sexual activity. The girl stated that Walker threatened her. Because of this threat, the girl denied having sex with Walker to her mother and told the doctor that she had sex with her brother, not Walker. Thus, the evidence is legally sufficient to support the jury's verdict in this case, and the trial court did not abuse its discretion in denying the motion for JNOV.

**B. New Trial Motion**

20

## Standard or Review

¶61. "A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for new trial." *Webster v. State*, 817 So.2d 515, 518 (Miss. 2002).

¶62. In *Edwards v. State*, 800 So.2d 454, 464-65 (Miss. 2001), this Court held that it has limited authority to interfere with a jury verdict. The Court considers all the evidence in the light that is most consistent to the jury verdict. *Id*. "The prosecution is given 'the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id*.

¶63. Here, the girl identified Walker as the person that had sexual intercourse with her. Walker had a key and access to the girl's home. The girl told her mother and the police about the sexual incidents between Walker and herself. Dr. Cloy determined that the girl's hymen was not intact which could signify sexual activity. Walker had threatened the girl if she told anyone about having sex with him. Taped telephone conversations with Walker and the girl indicated an intimate relationship. Walker told the girl that he loved her and that she was "sexy and appealing." A birth certificate confirmed that the girl was born in September 1986, making her 13 years old at the time of the last incident in August, 2000. Walker was 45 years old at the time of the incident.

¶64. The jury had the option of finding Walker not guilty or guilty on the two counts of statutory rape. However, the jury found beyond a reasonable doubt that Walker was guilty of both counts of statutory rape. The trial court did not abuse its discretion in denying Walker's motion for new trial. Reviewing the evidence in the light that is most consistent to the jury verdict, there is substantial evidence in the record that reasonable and fair-minded jurors would have found Walker guilty of statutory rape.

¶65. For these reasons, I dissent and would affirm the judgment of the Hinds County Circuit Court.

**COBB, P.J., JOINS THIS OPINION IN PART.**

**RANDOLPH, JUSTICE , DISSENTING:**

¶66.     I respectfully dissent because the majority errs in holding that the towel was inadmissible under M.R.E. 403.  All issues regarding the prosecution's failure to scientifically link the towel to the defendant go to the weight of the evidence, not its admissibility.  The victim's testimony, in which she positively identified the towel that she secured following one of the incidents, was a sufficient basis for the admission of the towel.

¶67.     Assuming, arguendo, that the towel was improperly admitted, there is sufficient other evidence to affirm the conviction.  Accordingly, any error in admitting the towel was harmless.

¶68.     For these reasons, I would affirm the circuit court's judgment.

**COBB, P.J., AND EASLEY, J., JOIN THIS OPINION.**