CARLTON, J., for the Court.
 

 ¶ 1. A Washington County grand jury indicted Joseph Stevenson for the statutory rape of S.S.
 
 [1]
 
 in violation of Mississippi Code Annotated section 97-3-65(1)(b) (Rev.2007). After a jury trial in the Wash
 
 *315
 
 ington County Circuit Court, Stevenson was convicted and sentenced to serve a life sentence in the custody of the Mississippi Department of Corrections (MDOC). Stevenson now appeals his conviction and sentence. Finding no reversible error in the trial court, we affirm.
 

 FACTS
 

 ¶ 2. This case stems from several sexual encounters between S.S., a minor, and Stevenson in June 2004, when S.S. was eleven years old. Stevenson was a friend to S.S.’s family and visited frequently in their home. S.S. knew Stevenson because he and her mother, Leigh,
 
 [2]
 
 were friends.
 
 [3]
 
 Stevenson would sometimes help Leigh by driving S.S. and her younger brother back and forth to school.
 

 ¶ 3. S.S. testified at the trial. She stated that Stevenson would sometimes tell her that he loved her and he would marry her when she “got big.” S.S. stated that Stevenson had been in their home on at least four occasions when her mother was not home. On the first occasion, S.S. testified that she had allowed Stevenson to come into the home while her mother was away and her younger brother was asleep. S.S. testified that on that occasion, Stevenson showed her a “sex movie” that he had brought to the house with him. As the two watched the movie together, Stevenson assured S.S. that the woman in the movie “was not hurting.” Stevenson was only in the home a short time before leaving. S.S. estimated that he was there for three minutes. S.S. did not tell her mother that Stevenson had been in the house.
 

 ¶ 4. S.S. testified that Stevenson came to the home a second time, several days later, while her mother was away and her younger brother was asleep. S.S. let Stevenson come into the home. S.S. and Stevenson sat beside each other on the couch. S.S. testified that at that point, Stevenson “started feeling of me.” S.S. and Stevenson then had sex on the couch. S.S. testified that she was scared, but she had sex with Stevenson anyway because she loved him. Stevenson left before Leigh returned home from the store. S.S. did not tell her mother that Stevenson had been in the house.
 

 ¶ 5. Stevenson visited S.S. a third time while Leigh was across the street helping a sick neighbor. S.S. testified that on this night, Stevenson “rubbed his thing on my private part,” but the two did not have sex. S.S. explained that when she said “his thing” she was referring to Stevenson’s penis. Leigh did not return to the home until after Stevenson left. Again, S.S. did not tell her mother that Stevenson had been in the home while she was away.
 

 ¶ 6. S.S. testified that Stevenson came to the house a fourth time when her mother was away. Stevenson parked his car outside S.S.’s bedroom window. He knocked at her window, and S.S. allowed him to come in through the front door. Stevenson and S.S. had sex on the couch. Stevenson left before Leigh returned home.
 

 ¶ 7. Leigh testified that she first learned of the abuse after checking caller ID and noticing that Stevenson had called while she was away. When she questioned S.S. about the phone call, S.S. began to cry. She then told her mother that she and Stevenson had been having sex. Leigh testified that as a result of her daughter’s revelation, she called the Greenville Police Department. Leigh testified that she sub
 
 *316
 
 sequently filed charges against Stevenson for the statutory rape of S.S. She did not take S.S. to see medical professionals at that time.
 

 ¶ 8. Leigh testified that a little over one week after finding out about Stevenson’s abuse of S.S., she walked into S.S.’s room and caught her talking to Stevenson on the phone. She overheard S.S. telling Stevenson that her mother did not leave the house anymore and that S.S. missed Stevenson and loved him. In response, Leigh “snapped and ... whipped her.” Leigh testified that she learned from S.S. that she had been with Stevenson earlier that night. Leigh looked between S.S.’s legs and noticed a “thick film” on her vagina. Leigh took S.S. to the Delta Regional Medical Center emergency room the next morning for an examination. S.S. admitted during her trial testimony that she had initially told her mother and grandmother that she had not had sex with Stevenson. S.S. explained that she was dishonest about the abuse initially because she did not want anybody to get in trouble.
 

 ¶ 9. The hospital contacted the Green-ville Police Department. Veronica Velasquez, a criminal investigator with the Greenville Police Department, met S.S. and her mother at the hospital. Velasquez testified that S.S. told her that she and her mother’s friend had performed oral sex on each other and “messed around.” Velasquez testified that S.S. told her the assault had taken place several weeks before. Velasquez contacted the Department of Human Services (DHS), which sent a social worker to meet with S.S. as well. Velasquez directed the hospital to conduct a rape kit on S.S. The rape kit was completed and sent to Reliagene Technologies for testing.
 

 ¶ 10. Linda Buck, the nurse who treated S.S. at the hospital, testified that she gathered the evidence for the rape kit. Buck testified that when she asked S.S., for purposes of completing the rape kit, whether there had been any penetration of her vagina, S.S. said there had been “attempted” penetration. When asked whether there had been any penetration of the mouth, S.S. again replied, “attempted.” S.S. told Buck that she last had sexual contact with Stevenson the day before being taken to the hospital. Dr. William Braken, the emergency room physician, testified that the tests performed on S.S. in the emergency room revealed non-motile sperm within S.S.’s vaginal vault. Dr. Braken testified that finding sperm within the vaginal vault indicated that there had been penetration of the vagina.
 

 ¶ 11. Huma Nasir, a forensic scientist and DNA analyst with Reliagene Technologies, testified regarding her analysis of the evidence obtained from the rape kit. She testified that she found seminal fluid on the swabs taken from S.S.’s vagina and vulva. One of the swabs of S.S.’s vulva revealed two sperm cells. Nasir was unable to obtain a DNA sample from the sperm cells because of the small number of sperm found. Nasir testified that she would need approximately fifteen or twenty sperm cells to extract a usable DNA sample.
 

 ¶ 12. At the close of the State’s case, Stevenson moved for a directed verdict of acquittal; his motion was denied. Stevenson then testified on his own behalf. He testified that he and Leigh had been involved in a sexual relationship for approximately two years. He testified that Leigh wanted him to move in with her, but he refused. Stevenson testified that he thought S.S. lied when she testified that he had abused her because Leigh would beat her if she told the truth. After his testimony, Stevenson renewed his motion for a directed verdict, and it was denied. The jury found Stevenson guilty, and he was
 
 *317
 
 sentenced to life imprisonment. Stevenson filed a motion for new trial on June 6, 2007, which was denied by the trial judge.
 

 ¶ 13. Stevenson raises one issue for our consideration on appeal. He argues that the trial court committed reversible error when it admitted evidence of seminal fluid found inside the victim even though it had not been identified through DNA testing as Stevenson’s. Within that argument, Stevenson implies that the jury’s verdict was against the overwhelming weight of the evidence. After consideration of both issues, we find no error and affirm Stevenson’s conviction and sentence.
 

 DISCUSSION
 

 I. Whether the chancellor erred in admitting evidence of seminal fluid and sperm found inside the victim’s body.
 

 ¶ 14. Stevenson argues that the trial judge erred in admitting the evidence that seminal fluid and sperm were found inside S.S.’s body because that evidence was not connected to Stevenson through a DNA comparison. Stevenson claims the prejudicial effect of the evidence outweighed its probative value and should have been excluded.
 

 ¶ 15. We review challenges to the admission or exclusion of evidence under an abuse of discretion standard, and we may reverse only when the trial judge has abused his discretion.
 
 Stubbs v. State,
 
 878 So.2d 130, 134(¶ 7) (Miss.Ct.App.2004). “However, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence.”
 
 Id.
 

 ¶ 16. Rule 401 of the Mississippi Rules of Evidence defines relevant evidence as follows:
 

 “Relevant Evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
 

 Stevenson admits that the evidence was relevant; however, he argues that under Rule 403 of the Mississippi Rules of Evidence, the evidence should have been excluded. Rule 403 allows for the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time, stating:
 

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 

 Stevenson argues that the probative value of the seminal-fluid evidence and testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and was misleading to the jury.
 

 ¶ 17. Our supreme court held in Cox
 
 v. State,
 
 849 So.2d 1257, 1269(¶ 39) (Miss. 2003), that the trial judge is not required to exclude evidence when the probative value is outweighed by the prejudicial effect of such evidence. The supreme court stated:
 

 [E]ven when the trial court determines under Rule 403 that prejudice substantially outweighs the probative value of particular evidence, it remains within the court’s discretion to determine whether to exclude the evidence, since Rule 403 does not mandate such an exclusion but rather states that the evidence
 
 may
 
 be excluded .... Our task as an appellate court reviewing a Rule 403 determination is not to engage anew in the Rule 403 balancing process. Rather, [the appellate court] must simply determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence.
 

 
 *318
 

 Id.
 
 (citing
 
 Baldwin v. State,
 
 784 So.2d 148, 156(¶ 27) (Miss.2001)).
 

 ¶ 18. Stevenson relies on
 
 Walker v. State,
 
 878 So.2d 913, 918(¶ 23) (Miss.2004), for the proposition that his conviction should be reversed. In
 
 Walker,
 
 the supreme court reversed Freddie Walker’s conviction for statutory rape because the trial court admitted a towel which had been soiled with semen.
 
 Id.
 
 The supreme court found that the soiled towel had not been properly authenticated and could not be positively connected to Walker, despite the victim’s testimony that she saw him clean himself with the towel and then hide the towel in her room.
 
 Id.
 
 at 915(¶ 15). The supreme court found that the admission of the towel failed the unfair prejudice standard set forth in Rule 403, stating: “With no direct link to the accused, a soiled towel would tend to mislead, confuse, and incite prejudice in the jury, especially in a capital rape trial involving a 13-year-old victim.”
 
 Id.
 
 at 916(¶ 15).
 

 ¶ 19. In
 
 Walker,
 
 no testing was conducted on the soiled towel, except tests to confirm that there was in fact semen on the towel.
 
 Walker,
 
 878 So.2d at 917(¶ 19). With no attempt to scientifically link the semen on the towel to Walker, the prosecution offered the towel into evidence as being stained with Walker’s semen.
 
 Id. at
 
 916(¶ 16). Furthermore, the semen was linked to an assault that occurred more than two years earlier and which was not included in the indictment.
 
 Id.
 
 at 915(¶ 8). The case at bar is clearly distinguishable.
 

 ¶ 20. In Stevenson’s case, forensic testing
 
 was
 
 conducted. However, no DNA sample could be obtained from the sample taken from S.S.’s body. Furthermore, the semen in Stevenson’s case was found inside S.S.’s body the day after the two had allegedly last had sex. The State connected the semen found inside S.S. with Stevenson through the victim’s testimony. Furthermore, the State did not present the semen evidence to the court as being Stevenson’s semen. The State presented the semen evidence as proof that S.S. had engaged in sexual intercourse before being taken to the hospital.
 

 ¶ 21. The semen evidence was relevant and more probative than prejudicial, and it made the State’s theory of the case more probable. In
 
 Baldwin,
 
 the supreme court upheld Clint Baldwin’s capital murder conviction despite his argument, among others, that the trial court improperly admitted DNA evidence which excluded Baldwin, but implicated his brother, in the rape and murder of the victim.
 
 Baldwin,
 
 784 So.2d at 156(¶ 25). Baldwin argued that the evidence was more prejudicial than probative and that the trial court erred in allowing it to be presented.
 
 Id.
 
 The supreme court held that the trial judge did not abuse his discretion in allowing the evidence because the evidence made the State’s theory of the case more probable and was consistent with the witnesses’ testimony that Baldwin’s brother raped the victim as Baldwin watched.
 
 Id.
 
 at (¶ 28).
 

 ¶ 22. Likewise, the evidence offered against Stevenson made the State’s case more probable than it would have been without the evidence. The probative value of the evidence outweighed any prejudice to Stevenson. The semen evidence corroborated S.S.’s testimony that she had sex with Stevenson the day before being taken to the hospital. That same testimony of the victim connected the semen recovered to Stevenson. We find that the trial judge did not abuse his discretion in allowing the State to present the semen evidence. This issue is without merit.
 

 II. Whether the jury verdict was against the overwhelming weight of the evidence.
 

 
 *319
 
 ¶ 23. Though he did not formally brief the issue, Stevenson implied throughout his brief that the jury’s verdict was against the overwhelming weight of the evidence. After trial, Stevenson filed a motion for a new trial, arguing that the verdict was against the overwhelming weight of the evidence. That motion was denied.
 

 ¶ 24. Our standard of review for arguments that a jury verdict was against the overwhelming weight of the evidence is as follows:
 

 [T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
 

 Price
 
 v. State,
 
 898 So.2d 641, 652(¶ 26) (Miss.2005) (internal quotations and citations omitted).
 

 ¶ 25. Stevenson focuses most of his argument on the fact that S.S. made inconsistent statements to her family, to the investigators, to her social worker, and to hospital staff. He also argues that S.S.’s claims were unsubstantiated and uncorroborated, because the semen found inside S.S.’s vaginal vault could not be positively identified through scientific testing as being his.
 

 ¶ 26. In
 
 Price,
 
 Price argued that his conviction should be reversed because of inconsistencies in the victim’s statements to family members and investigators.
 
 Price,
 
 898 So.2d at 651(¶ 23). The victim had, during two separate interviews with her DHS social worker, insisted that Price had not touched her in any inappropriate way.
 
 Id.
 
 at 646(¶ 6). Price further argued that the State had presented no corroborating medical or physical evidence to support the statutory rape charges against him.
 
 Id.
 
 The supreme court held that “the unsubstantiated and uncorroborated testimony of a victim is sufficient to support a guilty verdict if that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with conduct of one who has been victimized by a sex crime.”
 
 Id.
 
 at 651(¶ 23) (citations omitted). The supreme court further held that any questions regarding the credibility of the victim’s testimony were to be resolved by the jury.
 
 Id.
 
 at 652(¶25) (citing
 
 Schuck v. State,
 
 865 So.2d 1111, 1124(¶37) (Miss. 2003)).
 

 ¶ 27. The supreme court upheld a conviction in a similar case in
 
 Winston v. State,
 
 754 So.2d 1154, 1155(¶ 1) (Miss. 1999). In
 
 Winston,
 
 the defendant was convicted of capital rape under Mississippi Code Annotated section 97-3-65(1) (1994).
 
 Id.
 
 The victim, a thirteen-year-old girl, was examined by a doctor following the rape; the doctor determined that she had engaged in intercourse hours before the examination.
 
 Id.
 
 at (¶ 3). However, the rape kit, which was completed, revealed no evidence to identify Winston.
 
 Id.
 
 Winston argued on appeal that the evidence did not support his conviction.
 
 Id.
 
 at 1156(¶ 5). He argued that the victim’s statements were contradicted by her initial denial that Winston had assaulted her, as well as by another witness’s testimony regarding the timing of the incident.
 
 Id.
 
 at (¶¶ 6-7). As in
 
 Price,
 
 the supreme court upheld the conviction and found that “the credibility of the witnesses’ testimony and resolution of conflicting testimony was for the jury to determine.”
 
 Id.
 
 at (¶ 7) (citing
 
 Collier v. State,
 
 711 So.2d 458, 462(¶ 18) (Miss.1998)).
 

 
 *320
 
 ¶28. Like the victim in
 
 Winston,
 
 S.S. did make inconsistent statements; however, she explained in her testimony that she initially lied because she was scared and did not want anyone to get into trouble. Despite her inconsistent statements, S.S. consistently named Stevenson as the person with whom she had sex.
 
 See Goss v. State,
 
 413 So.2d 1033, 1035-36 (Miss.1982).
 

 ¶ 29. Taking as true the evidence which supports the verdict, including the statements of S.S., her mother, the DHS social worker, the doctor who examined S.S., and the nurse who completed the rape kit, we find that the jury’s finding that Stevenson was guilty of the statutory rape of S.S. is not “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction ‘unconscionable injustice.’ ”
 
 Price, 898
 
 So.2d at 652(¶ 26). This issue is without merit.
 

 ¶ 30. For the reasons stated above, we affirm the judgment of the trial court.
 

 ¶ 31. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., NOT PARTICIPATING.
 

 [1]
 

 . To protect the identity of the minor victim, we will use initials, rather than her name, throughout this opinion,
 

 [2]
 

 . We have also substituted a fictitious name for S.S.’s mother to further protect the identity of the minor victim.
 

 [3]
 

 . Leigh testified that she and Stevenson were only friends; Stevenson testified that they had been sexually involved for more than two years.