798 So.2d 592 (2001)
Donald C. JONES a/k/a Donald Christopher Jones, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KM-00590-COA.
Court of Appeals of Mississippi.
July 17, 2001.
Rehearing Denied October 30, 2001.
Kevin Dale Camp, Elizabeth Windsor, Jackson, Attorneys for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Jackson, Attorney for Appellee.
Before KING, P.J., PAYNE, and MYERS, JJ.
MYERS, J., for the court:
¶ 1. Donald C. Jones was convicted of his first DUI on October 6, 1999, in the Justice Court of Franklin County with Honorable Jerry Crane presiding. Following this bench trial, Jones appealed to circuit court. Honorable Forrest A. Johnson convicted Jones on February 28, 2000, and handed down a sentence of forty-eight hours in jail, suspended one-year probation, a fine of five hundred dollars, and mandatory attendance and completion of an alcohol safety education program. Jones perfected his appeal to this Court. Jones assigns two errors on appeal. The first error alleged is that the trial court erred in admitting and using copies of documents that were not properly authenticated to convict Jones. The second assignment of error is that the trial court erred in using an intoxilyzer test result that was not proven to be accurate to convict Jones.

FACTS
¶ 2. The Mississippi Highway Patrol was conducting a driver's license checkpoint on State Highway 33 in May of 1999. Donald C. Jones was asked to show proof of his license at the checkpoint but was unable to find it. Patrolman Tidwell told Jones to pull off the road and look for the license. *593 While looking, Tidwell observed Jones' slurred speech, red dilated eyes and also that Jones smelled of alcohol. Jones admitted to drinking a few drinks at a wedding about an hour and a half earlier. A field sobriety test was performed and Jones was placed under arrest. He was taken to the sheriff's department for administration of the intoxilyzer test. Tidwell administered the test and Jones' alcohol level, according to the machine, was.147%. Mr. Jones was charged under Miss. Code Ann. § 63-11-30(1) (Rev.1996) with driving under the influence of alcohol first offense.
¶ 3. Over the objection of the defense, the trial judge admitted Exhibit 3, a "copy of the page of the log book with the Intoxilyzer" as evidence that the intoxilyzer had been properly calibrated. The defense also objected to the admission of Exhibit 4, the "copy of a certification" regarding calibration that contained the "copy of a seal." Upon admission into evidence, both documents were deemed valid. The court then based its decision regarding Jones' guilt on the assumed validity and accuracy of the intoxilyzer readings.

DISCUSSION
1. Whether the trial court erred when it allowed uncertified copies into evidence?
2. Whether Jones was erroneously convicted based on an intoxilyzer reading that was not authenticated.
¶ 4. Patrolman Tidwell testified for the State that the copy of the page from the log book reflected the dates upon which the intoxilyzer was calibrated and the date the test was administered to Jones. He also testified that he had known the calibrating officer for several years and that the document under his review was a copy of a certificate of calibration. Tidwell said that he was able to operate an intoxilyzer, i.e., turn it on, administer it and turn it off, but was unable to explain how it worked. Nor was he aware of how body temperature or a person's blood to breath ratio affected the machine. He did not know details regarding the accuracy of the machine. There is no dispute as to whether the papers offered by the State were copies. The dispute is to whether they were properly authenticated and thus properly accepted into evidence.
¶ 5. Mississippi Rules of Evidence 901 requires that a document must be authenticated prior to its admission into evidence. The following is taken verbatim from two previous decisions by our supreme court in order to illustrate that this is not a new thought process in evidentiary procedure. In Johnston v. State, our supreme court stated:
The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. Hentz v. State, 542 So.2d 914, 917 (Miss.1989). The discretion of the trial court must be exercised within the boundaries of the Mississippi Rule of Evidence. Under M.R.E. 901, authentication and identification are conditions precedent to admissibility. Generally these serve simply to establish that a matter is what it is claimed to be. However in the illustrations listed for Rule 901, a process or system may be authenticated or identified when it is shown that the process or system is used to produce a result and that it produces an accurate result. 901(b)(9) Mississippi Rules of Evidence.
A chemical analysis of a person's breath, blood or urine is deemed valid only when performed according to approved methods; performed by a person certified to do so; and performed on a machine certified to be accurate. Certification *594 of the machines must take place at least quarterly. Miss.Code Ann. § 63-11-19 (1972). These safeguards insure a more accurate result in the gathering of scientific evidence through intoxilyzers and are strictly enforced. Where one of the safeguards is deficient the State bears the burden of showing that the deficiency did not affect the accuracy of the result. Gibson v. State, 458 So.2d 1046, 1047 (Miss.1984).
Johnston v. State, 567 So.2d 237, 238 (Miss.1990) (citations omitted).
In Monroe v. State, 515 So.2d 860, 868 (Miss.1987), we defined a "certified copy" as "[a] copy of a document or record, signed and certified as a true copy by the officer to whose custody the original in [sic] intrusted." Monroe v. State, 515 So.2d at 868 (quoting Blacks Law Dictionary, 207, (5th Ed.1979)). To certify is "[t]o authenticate or vouch for a thing in writing. To attest as being true as represented."
McIlwain v. State, 700 So.2d 586, 591 (Miss.1997).
¶ 6. The State needed to prove that the test was administered according to approved methods, administered by qualified personnel, and administered on a machine certified to be accurate. Without one of those elements, the test is inadequately performed; then the State must prove that the inadequacy did not affect the accuracy of the result. Gibson, 458 So.2d at 1047. At no time did the State meet this burden.
¶ 7. Jones suggests that he was wrongly convicted because copies of these documents were introduced into evidence without meeting the elements of M.R.E. 901(b)(7) or M.R.E. 902(4). Mississippi Rules of Evidence 901(b) illustrates examples of authentication or identification which conform to Rule 901(a). One such example is Rule 901(b)(7) which provides that "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." Mississippi Rule of Evidence 902(4) further provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to:
A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph 1,2, or 3 of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.
Id.
¶ 8. Jones points out that these copies were not properly authenticated even though they could have been self-authenticating with the proper official certification by attestation or execution of the custodian or seal by custodial state agency. In the absence of these, the State should have obtained the best evidence, the originals. However, the log book was not presented and neither was the original calibration certificate. The copies presented contained only a "copy of a seal."
¶ 9. In order for Tidwell to authenticate the two papers in question, the State should have proceeded under M.R.E. 901(b)(1). The State had to show that Tidwell was a witness with knowledge able to offer "testimony that a matter was what it [was] claimed to be." M.R.E. 901(b)(1). The prosecution could have properly authenticated the documents if only it had *595 further developed for the record Tidwell's knowledge of the origin of these papers.
¶ 10. Neither of the copies is signed with a signature purporting to be an attestation or execution. There were no questions of Tidwell regarding whether the copies accurately depicted the original documents in question. Nothing was asked regarding whether Tidwell was familiar with the calibrating officer's signature and whether the copy of it was an accurate representation of that signature. M.R.E. 901(b)(1-3). But, Tidwell did identify each of the copies, one as the log book and the other as the certificate of calibration.
¶ 11. The supreme court has been faced with the question of whether there was error in ruling that a sufficient predicate was laid in admitting the intoxilyzer results. In Johnston, the State presented testimony of the administering officer that the machine had been properly calibrated but presented no certificate of calibration. Johnston, 567 So.2d at 238. Johnston argued that the best evidence of accuracy would be the certificate not just the officer's testimony. Id at 239. The court ruled that without the proper certificate of calibration, the test results could not be deemed accurate. Johnston's case was reversed and remanded for a new trial. Johnston, 567 So.2d at 239.
¶ 12. In McIlwain, the officer testifying was not only the officer who administered the test, but he was also the officer who was certified to and actually calibrated the machine. McIlwain, 700 So.2d at 590. He testified to the accuracy of the reading from the intoxilyzer. "[T]he State must present the testimony and allow cross-examination of the calibrating officer only in the absence of the certification of the intoxilyzer or where there is a genuine issue as to the authenticity of the certification, which ... may normally be authenticated by the method set out in Rule 901(b)(7)." Id. The court found no merit in this claim and affirmed the trial court's holding. Id. at 591.
¶ 13. In this case, there was no properly authenticated certificate of calibration and no officer trained to calibrate intoxilyzers to vouch for the validity of the reading. Because the copy of the certificate of calibration and the copy of the page from the log book were not properly authenticated, they were erroneously entered into evidence. Without these documents and the testimony elicited from them, Jones would not have been convicted. There was a lack of proof of accuracy on the part of the test itself because the validity of the certification was at issue. The validity of which would have been apparent had the State produced the certificate of calibration or a certified copy. Since Tidwell was not the calibrating officer, he could not testify to the machine's accuracy. However, the State was not required to produce the calibrating officer. They had only to produce a certified copy of the calibration certificate issued by Officer Breland or a copy thereof certified as true and accurate by a custodian of these records or seal of the state agency.
¶ 14. Tidwell's mere identification alone is not enough to authenticate the two copies of documents that could have been obtained. In addition the State did not secure the authentication of these copied documents even through Tidwell's limited knowledge of them or through proper certification by a custodian of these records. Officer Tidwell did not testify as to whether the copies were accurate representations of the log book and the certificate of calibration of the intoxilyzer. The documents were not properly authenticated under M.R.E. 901 and thus erroneously admitted into evidence.

*596 CONCLUSION
¶ 15. In order to prove the accuracy of the intoxilyzer machine, the State either needed the calibrating officer to testify or the certificate of calibration as evidence of accuracy. Without the original certificate, a certified copy would have sufficed. The State offered none of these. Finding merit in Jones' claims that the lower court abused its discretion and erred in admitting unauthenticated evidence and using such evidence to secure a conviction, we reverse and remand for a new trial.
¶ 16. THE JUDGMENT OF THE FRANKLIN COUNTY CIRCUIT COURT OF CONVICTION OF DUI-FIRST OFFENSE IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FRANKLIN COUNTY.
KING, P.J., BRIDGES, PAYNE, LEE, IRVING and CHANDLER, JJ., concur. SOUTHWICK, P.J. concurs with separate written opinion joined by MCMILLIN, C.J., BRIDGES, PAYNE and THOMAS, JJ.
SOUTHWICK, P.J., concurring:
¶ 17. The majority reverses because of perceived defects in the authentication of certain documents introduced into evidence. I agree that the absence of certifications meant that the documents were not self-authenticating. However, I am concerned that the majority may appear to have placed undue limits on the alternative means to authenticate this evidence. Thus I write separately.
¶ 18. As the majority discusses, evidence was needed to prove whether "1) proper procedures were followed, 2) whether the operator of the machine was properly certified to perform the test, and 3) whether the accuracy of the machine was properly certified." Johnston v. State, 567 So.2d 237, 238 (Miss.1990); Miss.Code Ann. § 63-11-19 (Rev.1996). The two authentication issues both relate to proof of the third item, the accuracy of the machine. One document introduced was a photocopy of a page from the log book that is kept with the machine. It stated that the monthly calibration of the machine had been performed on May 13, 1999, ten days before the test was administered on Jones. A photocopy was also introduced of the actual certificate signed by that officer after he calibrated the machine on May 13. That document was also said to have been retained with the machine. The machine itself was kept in the sheriffs office.
¶ 19. Officer Tidwell, who administered the test to Jones, was the witness through whom these two documents were admitted. If Tidwell had testified that he or someone in his presence made the copies from originals filed in the sheriffs office, that is proper authentication:
Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.
M.R.E. 901(b)(7). Tidwell made no representations about how he obtained the copies.
¶ 20. Foundationally, it has been implicit in the precedents that the certificate issued by the State Crime Laboratory of its periodic inspection of an intoxilyzer is authorized to be filed with the machine in the public office where it is located. The statute merely states that the Crime Laboratory is to issue a certificate verifying its accuracy. Miss.Code Ann. § 63-11-19 (Supp.2000). There may be another statute or regulation that provides for a log book to be kept with the machine. Regardless, I find sufficient justification for these documents to be with the intoxilyzer *597 in whatever public office the machine is kept to justify authentication as public records.
¶ 21. Had Tidwell testified that he performed or witnessed the copying of both the log book and the calibrating officer's certificate, that would be testimony about the authenticity of official writings properly filed in a public office. Such testimony is precisely what Rule 901(a) means when it states that the requirement of authentication is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." M.R.E. 901(a). One decision stated that normally the certificate of the accuracy of the intoxilyzer would "be authenticated by the method set out in Rule 901(b)(7)." McIlwain v. State, 700 So.2d 586, 591 (Miss.1997).
¶ 22. This is why I believe that the majority should not be read to conclude that in the absence of self-authentication, the State should have gotten the originals. Of course, providing the originals are an option, but the "best evidence" rule does not make that requirement. The best evidence rule is codified as Rule 1002, and applies to writings, recordings, and photographs. M.R.E. 1002 & cmt. See also, CAROLYN ELLIS STATON, MISSISSIPPI EVIDENCE 324 (3d ed.1995). Rule 1002 recognizes that the original should be offered unless otherwise provided by law. Rule 1003 is such an "otherwise" provision. It says that duplicates are as admissible as originals unless a genuine issue as to authenticity of the original is made or admission would be unfair in the circumstances. M.R.E. 1003. A "duplicate" is nothing more than a mechanically reproduced copy, but its authenticity must be shown. There is no genuine issue of authenticity if one of the optional requirements of either Rule 901 or Rule 902 has been met. Therefore, a copy of a proper document is admissible under Rule 1003 if it has been authenticated under Rule 901 or 902.
¶ 23. Admission of a duplicate of a public record has its own rule. Rule 1005 states that the contents of an admissible public record may be proved by a copy that is certified as correct under the self-authentication principles of Rule 902 or which is proven by a witness who testifies that it has been compared to the original. M.R.E. 1005. One authority on the similar federal rule has concluded that if a witness testifies that he personally made a photocopy of the record, that satisfies the need to state that it had been "compared" to the original, at least absent any indication of a discrepancy. WEINSTEIN'S FEDERAL EVIDENCE 1005-9 & n. 3 (2d ed.1997), at § 1005.04.
¶ 24. As I read the different sections of the rules of evidence, Rule 1005 would have allowed admission of public documents properly authenticated under either Rule 901 or 902. The choices are not limited to self-authentication or admission of the original. All the means of authenticating under Rule 901 and 902 are acceptable and cannot be rejected because of "best evidence."
McMILLIN, C.J., BRIDGES, PAYNE AND THOMAS, JJ., join this separate opinion.