# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KM-00848-SCT

*LEE MADISON PALMER, JR.*

*v.*

*CITY OF OXFORD, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/22/2002 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID G. HILL |
| ATTORNEY FOR APPELLEE: | BELA J. CHAIN, III |
| CITY ATTORNEY: | BELA J. CHAIN, III |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Near midnight on June 20, 2001, Lee Madison Palmer, Jr. (Palmer), a minor, was pulled over by Officer Ray Sockwell (Officer Sockwell) of the City of Oxford Police Department.  The officer initially stopped Palmer on a speeding violation, traveling 45 miles per hour in a 30 mile per hour zone.  Upon speaking with Palmer, Officer Sockwell noticed the strong smell of alcohol.  This police stop eventually led to Palmer being tried and convicted of first offense driving under the influence (DUI) and speeding by the Oxford Municipal Court.  Palmer then appealed the decision to the Circuit Court of Lafayette County for a de novo trial.  On April 22, 2002, Palmer was tried and convicted in the circuit court, the  Honorable Andrew K. Howorth presiding, of the crimes of  first offense driving under the influence (DUI) and speeding.  Palmer was sentenced to serve a term of 24 hours at the Lafayette County Detention Center,

pay a $1,000 fine and taxed with court costs and assessments. Palmer now appeals to this Court from the DUI first offense conviction and sentence only.

**FACTS**

¶2.      On the night of June 20, 2001, Officer Sockwell stopper Palmer for speeding, traveling 45 miles per hour in a 30 mile per hour zone. The officer determined the speed that Palmer was traveling through the use of radar. When Officer Sockwell spoke to Palmer, he noticed the strong smell of alcohol from Palmer's breath. Officer Sockwell asked Palmer whether he had been drinking. Palmer told the officer that he had had a few beers. Officer Sockwell then asked Palmer to step out of the vehicle. The officer noticed Palmer used the vehicle to support himself. Officer Sockwell also noted that when Palmer spoke he slurred his speech.

¶3.      Next, Officer Sockwell administered field sobriety tests including the HGN, walk and turn and one legged stand. Officer Sockwell wrote down Palmer's test results contemporaneously with the administration of the tests on an Alcohol Drug Influence (ADI) report. After administering the HGN test, the officer noted that he observed four out of the possible six clues on this test.

¶4.      A heel to toe test also was administered to Palmer. Officer Sockwell described the heel to toe test as follows:

> Okay, sir. The subject is placed in a position on which right foot will be in front of his left foot on a line. His hands down at his side and he is given instructions on how to perform the test. He was told to take nine heel to toe steps down the line, turn by taking a series of small steps and nine heel to toe steps back during this time he is to keep his hands at his side without looking at his feet while he walks. Count out loud so I can hear him and don't stop the test until he has completed the whole test and then he is asked if he understands.

Officer Sockwell saw Palmer exhibit six out of a possible eight clues, which included: Palmer being unable to keep his balance during the test instruction period, starting the test too soon, stopped walking, missed a heel to toe movement, raised his arms, and performed 10 steps instead of nine.

¶5.     Officer Sockwell also administered the one legged stand test.  Out of the four possible clues for this test the officer observed all four clues which included swaying, raising his arms, hopping and putting his foot down.  The officer also stated that Palmer exhibited three classic signs of intoxication which included the strong odor of alcohol on his breath, being unsteady on his feet and slurred speech.  From his observation of the classic signs of intoxication, Officer Sockwell stated that he felt that Palmer was under the influence of intoxicating beverages.  The officer made this determination before he administered the field sobriety tests to Palmer.  Upon completion of the field sobriety tests, Officer Sockwell felt that Palmer was operating a motor vehicle under the influence of intoxicating beverages.

¶6.     Soon thereafter, Officer Sockwell transported Palmer to the Lafayette County Detention Center to offer Palmer the Intoxilyzer 5000 test.  At the center, Palmer was placed in the intoxilyzer room for observation by Officer Sockwell.  Officer Sockwell is certified to use the Intoxilyzer 5000 machine.  Before administering the intoxilyzer test, Officer Sockwell observed Palmer for 20 minutes to make sure that he neither ingested nor regurgitated anything by mouth.  Palmer was offered three intoxilyzer tests at 00:48, 01:10 and 01:13 a.m. on June 21, 2002.  All of the test cards were part of the record.  Two of the tests administered on June 21, 2001, at 00:48 and 01:10, resulted in no blood alcohol content (BAC) reading.  The two test results from the Intoxilyzer 5000 machine stated "Invalid test, check ambient conditions."  The last test administered at 01:13 indicated that Palmer's BAC was .127.  Officer Sockwell testified that he showed and told Palmer the test result of .127.

3

¶7.     A citation document was given to Palmer on or about June 21 by Officer Sockwell.  Officer Sockwell admitted that the copy of the citation that he served upon Palmer did not record the .127 BAC result.  Officer Sockwell merely checked block A and C on the citation served upon Palmer.[1]  Also, Officer Sockwell did not record the second invalid test (01:10 a.m.) on an intoxilyzer log sheet.  Officer Sockwell stated that he read Palmer his rights with each test although there was no documentation to show that he had read Palmer his rights on the third test (01:13 a.m.).  Between the second and third test Officer Sockwell stated that he just changed the mouthpiece on the machine.

¶8.     After hearing the testimony from Officer Sockwell, the sole witness at trial, and hearing arguments by both the prosecution and defense, the trial judge ruled that Palmer was guilty of speeding and DUI first offense.  The trial judge also stated:

> I am going to have to say that, you know, there are issues here and there are things that procedures that are to be followed but nothing has been brought to the Court's attention either by statute or any case law that supports the propositions that the defendant's procedural rights or any rights of the defendant in this case were violated in this arrest.

From this ruling Palmer appeals to this Court raising the following issues:

---

[1]  In 2003 the alcohol concentration level were amended by the Legislature, however, the levels reflected in the citation below were the proper levels in June 2001when Palmer received his citation.  The 2001 citation states the in pertinent part:

> That the aforesaid person did, in violation of § 63-11-30(1) Mississippi Code 1972, willfully and unlawfully drive or otherwise operate a motor vehicle within this state:
> 9  (a)  Under the influence of intoxicating liquor; or .....
> 9  (c)  9 Having an alcohol concentration of ten one-hundredths percent. (.10%) or more for persons who are above the legal age to purchase alcoholic beverages under state law, to wit: _____ % or
> 9 Having an alcohol concentration of two one-hundredths percent. (.02%) or more for persons who are below the legal age to purchase alcoholic beverages under state law, to wit: _____ %

Both boxes (a) and (c) and the second section of section (c) concerning the alcohol concentration levels of .02 % for a person below the legal age to purchase alcoholic beverages were checked on the citation.

4

## ISSUES

I.     **Whether the trial court erred in admitting the intoxilyzer test over Palmer's objection to a series of substantive and procedural irregularities.**

II.     **In the alternative, whether the trial court erred in convicting Palmer despite the testing officer's failure to follow established procedures approved by the Commissioner of Public Safety and the State Crime Lab, and specifically, the Officer's failure to follow the instructions on the Intoxilyzer 5000 Operator's Manual.**

III.     **Whether the trial court erred in convicting Palmer of DUI over his objection to irregularities in the "copy" of the citation/affidavit he received.**

IV.     **Whether the trial court erred in convicting Palmer of "common law" DUI in the absence of specific proof that Palmer's "ability to drive a vehicle has been impaired by the ingestion of intoxicating liquor.**

V.     **If Palmer is found guilty of DUI first offense "common law" DUI standards is Palmer entitled to petition the trial court for non-adjudication under the zero tolerance for minors portion of the implied consent law.**

## LEGAL ANALYSIS

### I. Intoxilyzer Test

¶9.     Palmer's main contention is that the BAC test result should not have been admitted into evidence. In his testimony, Officer Sockwell, the sole witness at trial, referenced a "booklet" which was the operating manual for the Intoxilyzer 5000 machine. Palmer argues that the trial court erred by not admitting in toto the operating manual of the Intoxilyzer 5000 machine. He also argues that the trial judge never explicitly ruled on his motion for admission of the manual. He claims that the failure to admit the manual deprived him "of convincing evidence of the test's unreliability and of the failure of the testing officer to follow protocol as established by his training and the source of the testing instrument." Palmer requests that this

Court reverse the trial court and, at a minimum, remand for a rehearing with the admission of the manual. In the alternative, Palmer requests that this Court take independent notice of the manual and remand for a rehearing and deny the admission of the BAC test because of violations of the procedures mandated by the Implied Consent Law.

¶10.     This Court in the DUI case *McIlwain v. State*, 700 So.2d 586, 590 (Miss. 1997), held that:

> The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. *Hentz v. State*, 542 So.2d 914, 917 (Miss. 1989), *Monk v. State*, 532 So.2d 592, 599 (Miss. 1988).  The discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence.

*McIlwain*, 700 So.2d at 590 (quoting *Johnston v. State*, 567 So.2d 237, 238 (Miss. 1990).  In

*McIlwain*, the Court set forth a three-prong test based upon *Johnston*, "for laying the predicate prior

to admitting the results of a D.U.I. test." *Id.*

> The court must determine whether the 1) proper procedures were followed, 2) whether the operator of the machine was properly certified to perform the test, and 3) whether the accuracy of the machine was properly certified.

*Id.* (citing *Johnston,* 567 So.2d at 238).

¶11.     Officer Sockwell was the sole witness to testify at trial.  During his testimony, a certificate certifying

that the intoxilyzer machine was inspected, working, calibrated and met acceptable standards was admitted

into evidence.  Officer Sockwell also stated that he had a certificate showing that he was qualified to use

the Intoxilyzer 5000 machine.  The certificate, entitled "Mississippi Department of Public Safety Permit To

Conduct Breath Analysis," was admitted into evidence.

¶12.     When questioned by the prosecution about the test result readings for the first two tests (00:48 and

01:10),  Officer Sockwell stated that the results on both test cards stated "invalid test, check ambient

6

conditions." The prosecution then asked the officer what the results meant resulting in the following exchange:

> Q.[State]   Do you know what - - when intoxilyzer five thousand machine gives you that message [Invalid test, check ambient conditions], do you know what that means, sir? What are you supposed to do?
>
> \*       \*       \*       \*       \*
>
> A.       It says in the booklet.
>
> > [Defense]   May I object to a booklet being received.
> > [Court]   I think you have already objected to him answering his question. I am going to see what his answer is and if you need to make a further objection after he answers it I will let you.
> > [Defense]   I apologize. Just wanted to be timely.
> > [Court]   I understand?
>
> A.       Showed invalid test check ambient conditions. The intoxilyzer has detected a presence of substance in the room which will stop the instrument from completing an air reading.
>
> > [Defense]   I object to him having read on a booklet and if the Court is going to consider it I will ask that it be admitted so the court can consider whether or not it be allowed without.
> > [Court]   Your objection will be noted and I'm going to allow him to continue with the examination and allow you to cross examine him on this point so I can be a little more edified, if that is a word before this is over with.
>
> Q.[State]   Now let's talk about [where] you said you got that from a booklet. Where did you get that definition?
> A.       Well actually it was given to me by the chief DUI Officer, Sergeant Goolsby. Part of our training process when you come across certain things I asked him about this I had on an earlier case and he give me a copy of this so I could refer to it.
> Q.       What is protocol once you receive that error message that you have got on those two test cards that you have in front of you. What do you do?
> A.       Run the test again.
> Q.       After doing what if anything?
> A.       It's not necessary, from my training it's not necessary but I waited for an additional 20 minutes and offered him the test again.

¶13.     On cross-examination, Officer Sockwell stated that he allowed Palmer over 40 minutes total for the intoxilyzer tests.  The officer waited twenty minutes before administering the first test, another twenty minutes before the second test and two minutes between the second and third test.  Pursuant to *McIlwain*, the three-prong test for laying a predicate for admission of the test was properly completed as indicated in the testimony and submission of the certificates.

¶14.     As for the manual, the trial judge stated that he would allow Officer Sockwell to be cross-examined on that point.  However, during the whole trial including cross-examination  no manual was ever presented to the trial judge for consideration.  While it is somewhat unclear from the record, the State argues that Officer Sockwell did not have a manual with him on the day of his testimony nor was a subpoena requested for the production of the manual.  Nevertheless, the officer did testify that he was trained to run the tests again whenever there was a reading of an "invalid test check ambient conditions."  Officer Brian Goolsby, chief DUI officer, had given Officer Sockwell the definition as part of the training process.  In addition, Officer Sockwell explained that his training taught him that a strong odor of an intoxicating beverage in a room will cause this type of machine reading.  Officer Sockwell then stated that on the night in question, only Palmer and he were in the intoxilyzer room which is very small, only a little bit bigger that the size of a closet.  On cross- examination there was an indication that Officer Sockwell had some sort of "form" which contained the definition.  When questioned about the training that Officer Sockwell received on ambient conditions, he also stated that "Sergeant Goolsby giving me that form showing me the reason for that type of reading." (emphasis added)

¶15.     The record is unclear about the alleged reference to the operating manual.  Officer Sockwell does refer to a "booklet"; however, he stated that Officer Goolsby gave him information for the "check ambient condition" test result as part of his training process.  On cross-examination, Officer Sockwell refers to a

"form" that Officer Brian Goolsby gave to him. The manual was not excluded by the trial court rather the trial court allowed the defense to cross-examine Officer Sockwell on this point. There was no manual introduced into evidence in this case. Accordingly, this Court finds that the trial court did not err and the issue is without merit.

¶16.    Furthermore, we find that despite Officer Sockwell's reference to the definition on the "form," his testimony still was independent and sufficient. In other words, Officer Sockwell testified independently based on his training process and experience. Officer Sockwell explained that "[t]hrough my training we have been taught that the strong odor of intoxicating beverages in a room will cause that type [an "invalid test check ambient condition"] of reading. This issue is without merit.

## II.  Testing Procedure

¶17.    Palmer next argues that there were irregularities in the testing procedure. At trial, he argues that there were two key procedural deficiencies:  (1) improper logging of the intoxilyzer test; and (2) failure to read Palmer his rights prior to the third BAC test.

### A.    The Logbook

¶18.    Officer Sockwell testified as to the existence of an intoxilyzer logbook. The logbook sheet was admitted into evidence. The logbook has two entries for Palmer on June 21, 2001 at 00:48 and 01:13 only. During his direst testimony, Officer Sockwell stated that he administered three tests to Palmer at 00:48, 01:10 and 01:13. These three test cards were admitted into evidence. However, on cross-examination, Officer Sockwell stated that in the intoxilyzer logbook he only recorded two tests, those being the first test (00:48) and the last test (01:13). Therefore, the second test at 01:10 was not on the logbook sheet. At trial, the following exchange occurred:

| Q. [Defense] | And based on your training you're required to note all test[s] which are given; is that not correct? |
| A. | There are a lot of time[s] they are not noted in here. The subject goes under it might not be a notation here. I didn't feel it was needed in there. The middle one [test], I didn't feel it was needed to be in there. It was showing the same as the first. |
| Q. | Are you suggesting that you don't note when they go under. Aren't there some on there that are lower reading[s]? |
| A. | I am saying that some people do and some people don't, sir. |

Palmer asserts that Officer Sockwell's nonchalance about selectively recording the tests on the logbook had bearing on the hearsay exception for admissibility of public records and their purported reliability and the substantial compliance requirement of the Implied Consent Law.

¶19.    Palmer relied upon *Jones v. State*, 798 So.2d 592, 594 (Miss. Ct. App. 2001), a DUI case involving authentication of certificates for the proposition "[w]here one of the safeguards is deficient the State bears the burden of showing that the deficiency did not affect the accuracy of the result." (citations omitted). The State argues that the logbook was for record keeping to determine the number of tests given. In addition, the State argues that the test cards have all the information on them. While the Officer stated that he only logged two test on the intoxilyzer logsheet, he retained the three test cards. Therefore, the State maintains that Palmer was not prejudiced by the logging of the two tests when the officer retained three test cards. Further, the State maintains that the three test cards could not surprise Palmer and the log sheet contained no information not indicated on the actual test cards. We agree that the State is correct in its argument that Palmer was not prejudiced by the failure to note three tests on the log sheet where the actual test cards were part of the record.

**B.     Reading Palmer His Rights**

¶20.    Palmer argues that the warning is statutory pursuant to § 63-11-21[2] and part of the procedure approved by the  State Crime Lab and the Commissioner of Public Safety.  Further, Palmer asserts that the State must prove the warning beyond a reasonable doubt as an element of § 63-11-30(c).  The State argues that the officer did not deviate from the implied consent warning and that there was only one completed test with a breath sample.  At issue is the second checklist which has a warning time of 01:09 prior to the second test at 01:10. Likewise, Officer Sockwell testified that he read Palmer his rights when he administered the test.  On cross-examination, Officer Sockwell also testified that he read Palmer his rights prior to each and every intoxilyzer test.  However, there are only two intoxilyzer checklists.  On redirect, Officer Sockwell stated that the rights that he read to Palmer never changed between the first, second or third reading.  The testimony indicates that Officer Sockwell read Palmer his rights before attempting to administer the intoxilyzer test and obtaining a BAC reading.  Accordingly, this issue is without merit.

### III.  Irregularities in the "copy" of the citation/affidavit

¶21.    Palmer's argument again boils down to whether there was substantial compliance by the officer in the administration of the citation. Palmer asserts that the copy of the citation that he received was different than the original filed citation.   He cites to three irregularities, two of which he admits are of "relatively insignificance"[3] and one that is "substantial."  Significantly, Palmer received a copy of citation that had a blank space or no BAC reading under subsection C of the citation.  He contends that at a minimum this Court should reverse and remand as to the conviction and exclude the intoxilyzer test result.  The State

---

[2] The correct citation appears to be § 63-11-5.

[3]  Palmer indicated that his copy listed the make of car as a Ford whereas the filed original listed a Nissan.  Also, the copy was signed by Officer Sockwell but he did not attest it.

11

argues that Palmer has never asserted that he did not know with what offense he was charged and all proceedings were based upon the original ticket at the arraignment, the municipal court and the circuit court.

¶22.    Indeed, Officer Sockwell admitted that the copy of the citation that he served upon Palmer did not have the .127 BAC result.  Officer Sockwell merely checked block A and C on the citation served upon Palmer.  However, Officer Sockwell also testified that he explained the test to Palmer that night and told him his test result.

¶23.    Palmer relies in part upon *Edwards v. State*, 800 So.2d 456, 461 (Miss. 2001), a case dealing with statutory construction of burglary of a business as opposed to a dwelling. In *Edwards,* this Court stated:

> This Court in *Reining v. State*, 606 So.2d 1098, 1103 (Miss.1992), provided guidance in cases involving criminal statutes as follows:
>
>> Although a statute imposing criminal penalties must be strictly construed in favor of the accused, it should not be so strict as to override common sense or statutory purpose. *United States v. Brown*, 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948); *see also State v. Burnham*, 546 So.2d 690, 692 (Miss.1989). Strict construction means reasonable construction. *State v. Martin*, 495 So.2d 501, 502 (Miss.1986). This Court has held that the test concerning statutory construction is whether a person of ordinary intelligence would, by reading the statute, receive fair notice of that which is required or forbidden. *Burnham*, 546 So.2d at 692; *Roberson v. State*, 501 So.2d 398, 400 (Miss.1987); *Cassibry v. State*, 404 So.2d 1360, 1368 (Miss.1981).

800 So.2d at 461.  Miss. Code Ann. § 63-9-21(3)(b) and (c) and  § 63-9-21(6)(2001)) state:

> (b)    The traffic ticket, citation or affidavit which is issued to a person arrested for a violation of the Mississippi Implied Consent Law shall be uniform throughout all jurisdictions in the State of Mississippi. It shall contain a place for the trial judge hearing the case or accepting the guilty plea, as the case may be, to sign, stating that the person arrested either employed an attorney or waived his right to an attorney after having been properly advised of his right to have an attorney. If the

person arrested employed an attorney, the name, address and telephone number of the attorney shall be written on the ticket, citation or affidavit.

(c)     Every traffic ticket shall show, among other necessary information, the name of the issuing officer, the name of the court in which the cause is to be heard, and the date and time such person is to appear to answer the charge. **The ticket shall include information which will constitute a complaint charging the offense for which the ticket was issued, and when duly sworn to and filed with a court of competent jurisdiction, prosecution may proceed thereunder.**

(6)     **The original traffic ticket**, unless the traffic ticket is filed electronically as provided under subsection (8) of this section, **shall be delivered by the officer issuing the traffic ticket to the clerk of the court to which it is returnable to be retained in that court's records and the number noted on the docket. The officer issuing the traffic ticket shall also give the accused a copy of the traffic ticket.** The clerk of the court shall file a copy with the State Auditor within forty-five (45) days after judgment is rendered showing the amount of the fine and cost or, in cases in which no judgment has been rendered, within one hundred twenty (120) days after issuance of the ticket. Other copies that are prescribed by the State Auditor pursuant to this section shall be filed or retained as may be designated by the State Auditor. All copies shall be retained for at least two (2) years.

(emphasis added). Palmer argues that the statute requires that a copy of the information comprising a complaint and that pursuant to § 63-9-21(6) the original ticket is filed and the accused is given a copy of the ticket.

¶24.   The ticket that Palmer received had the following pertinent part under section (c) :

**9** Having an alcohol concentration of two one-hundredths percent.
(.02%) or more for persons who are below the legal age to purchase alcoholic beverages under state law, to wit: _____ %.

While Palmer did not have an exact BAC reading listed on the copy of the citation that he received, we find that he nevertheless was aware that the second portion of Section C, concerning the BAC level allowable for individuals under the legal age to purchase alcohol, was checked by the officer. The exact BAC level was not indicated but it is clear that Palmer had to have a level above .02% to be cited for the violation.

13

As stated in *Edwards*, 800 So.2d at 461, while a criminal statute that imposes a penalty is strictly construed it is not so strictly construed as to be devoid of common sense or statutory purpose. An ordinary person who reads the citation would have notice of the type of forbidden behavior. In addition, Miss. Code Ann. § 63-9-21(3) (c) provides that a ticket have adequate information which will constitute a complaint from which prosecution may proceed whereas § 63-9-21(6) provides that the ticket must be filed and a copy given to an accused. Palmer's argument is strained. Palmer was provided a copy of the ticket prior to leaving the detention center. Under Palmer's argument any accused would have to wait at a detention center or jail until such time as the clerk's office is open to file the ticket and then give a copy to the accused. Theoretically, a person arrested for a DUI on Friday night would then have to wait in jail until Monday morning when the clerk's office opens to receives his filed copy of the ticket. We find that this argument does not reflect the intent of Miss. Code Ann. § 63-9-21 when read as a whole. Accordingly, this issue is without merit.

### IV. "Common law" DUI

¶25. This next issue is predicated upon this Court finding that the admission of the BAC test is erroneous. Palmer argues that if this Court finds, as he believes, that the BAC was erroneously admitted then he requests this Court to determine whether the State adequately proved the element of what is commonly called "common law" DUI.

¶26. We find that the BAC test was properly admitted and as such this Court need not address this issue in further detail. Accordingly, this issue is without merit.

¶27. In the alternative, there was sufficient evidence to convict Palmer under Miss. Code Ann. § 63-11-30. Block "a" of the ticket states that a person is in violation of the statute if he "willfully and unlawfully drive[s] or otherwise operate[s] a motor vehicle within this state (a) [u]nder the influence of intoxicating

14

liquor." Palmer argues that Officer Sockwell witnessed no erratic driving by him, and therefore, block "a" is inapplicable to him. Palmer's argument is without merit.

¶28. The officer stopped Palmer for speeding. When he spoke to Palmer, the officer noticed the smell of an intoxicating beverage from Palmer's breath. The officer had Palmer step away from the car to determine if the smell was coming from the car or from Palmer himself. As Palmer stepped out of the vehicle he had to support himself on the vehicle. The officer then determined that the smell was from Palmer. The officer noticed that Palmer had some of the classic signs of intoxication such as the smell of an intoxicating beverage, slurred speech and unsteadiness. The officer then had Palmer perform a number of field sobriety tests, such as the walk and turn and one legged stand, all of which indicated that Palmer was impaired and was under the influence of intoxicating beverages. Officer Sockwell initially stopped Palmer for speeding, Palmer was driving the vehicle at the time the officer stopped him. The officer then determined that observed Palmer and determined that he was impaired and operating the vehicle under the influence of intoxicating beverages. This issue is without merit.

## V. Non-adjudication

¶29. Palmer argues, that if this Court finds that he is guilty of a first offense DUI under a "common law" theory, he is eligible for non-adjudication pursuant to the Zero Tolerance for Minors provision of the Implied Consent Law. Palmer received his citation and was convicted in 2001. Miss Code Ann. § 63-11-30(3)(a) (2001) which was applicable at this time stated:

> (3)(a) This subsection shall be known and may be cited as Zero Tolerance for Minors. The provisions of this subsection shall apply only when a person under the age of twenty-one (21) years has a blood alcohol concentration two one-hundredths percent (.02%) or more, but lower than eight one-hundredths percent (.08%). If such person's blood alcohol concentration is eight one-hundredths percent (.08%) or more, the provisions of subsection (2) shall apply.

According to the 2001 Zero Tolerance for Minors provision of the Implied Consent Law, the subsection only applied if the BAC reading is at least .02 % and no more than .08 %. This Court finds that the BAC test is admissible and since Palmer's BAC level was .127 % it is not within the parameters of the Zero Tolerance for Minors provision of the Implied Consent Law. Therefore, he is not afforded this provision of law. This Court need not address any analysis of this provision under a common law theory because this Court has found that the BAC test results are admissible. This issue is without merit.

## CONCLUSION

¶30.    For the foregoing reasons, the judgment of the Circuit Court of Lafayette County is affirmed.

¶31.    **CONVICTION OF FIRST OFFENSE DUI AND SENTENCE OF 24 HOURS IN THE LAFAYETTE COUNTY DETENTION CENTER AND FINE OF $1,000.00, AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**