# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-00876-SCT

*DAVIE CHAPMAN a/k/a DAVIE LEE CHAPMAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/12/96 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | P. SHAWN HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | J. KENNEDY TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND APPELLANT DISCHARGED - 4/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/27/98 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On January 30, 1996, Verda Bryan was robbed at gunpoint while working at the Mississippi Regional Housing Authority. While Bryan was working in a bathroom, a black male put a gun to his side and robbed him of his wallet and his watch. The robber ordered Bryan to drop his pants, after which the robber escaped. Officer Harvey Curry of the Newton Police Department responded quickly to Bryan's 911 call, and he immediately took Bryan for a ride in his police car in an attempt to locate the robber.

¶2. Officer Curry later testified at trial that Bryan failed to identify defendant Chapman on at least three occasions within an hour of the shooting. Officer Curry testified that the first failed identification occurred while Chapman was observed walking down the street mere minutes after the robbery:

We were stopping people, and, you know, trying to see whether or not was this the person that

robbed you, and at the time we ran into Davie Lee Chapman coming down Third Street. He was heading north on Third when he ran into him, and I said, "Is this the one that robbed you?" He said, "No."

The second failed identification occurred a bit further down the street, in front of Christy Foster's home. Officer Curry testified that:

> About that time, Davie Lee Chapman again came down Ora Street heading east right beside the patrol car. Still, he didn't say whether or not that was him. I didn't ask him, because I had already asked him at one time.

The third failed identification occurred at the same time that Bryan had tentatively identified Larry Joe Robinson as the man who had robbed him. Officer Curry testified that:

> A: Okay. We went on to begin to patrol again to see if we could find the person that was responsible for robbing him. We got back. Mr. Bryan pointed out Larry Joe Robinson as the person that looked like the one that robbed him.
>
> Q: Mr. Bryan pointed out Larry Joe Robinson ?
>
> A: Yes, Sir. Okay. I stopped here at William Payne's residence, and I had Larry Joe to come over to the car, and I asked Mr. Bryan, I said, "Is this the one that robbed you?" He said, "No, it looked like him, but it's not him." Again, Davie Lee Chapman was behind him. I said, "What about him?" Again, he said, "No."

Bryan did not identify Chapman as the robber until the day after the robbery, when Bryan saw Chapman in the police station. Chapman had been detained by the police on an unrelated matter, and, upon seeing Bryan staring at him, Chapman told Bryan that he was not the one who had robbed him. After this statement, Bryan identified Chapman as the robber for the first time. Chapman was charged and convicted of the robbery of Bryan and was sentenced to 25 years imprisonment. Chapman timely appealed to this Court.

## LAW

### A. The Trial Court Erred in Failing to Sustain the Appellant's Motion for a Directed Verdict and not Granting the Peremptory Instruction and the Verdict was Against the Overwhelming Weight of the Evidence.

¶3. Chapman's sole argument on appeal is that the jury's verdict of guilt was against the overwhelming weight of the evidence and should be reversed. Upon conviction of the criminal defendant, the presumption of innocence is replaced by a presumption that the conviction is valid and may only be rebutted by a finding of reversible error on appeal. ***Gollott v. State***, 646 So.2d 1297 (Miss. 1994). When a defendant challenges the sufficiency of the evidence to support a conviction, the evidence which supports the verdict is accepted as true by the reviewing court, and the State is given the benefit of all reasonable inferences flowing from the evidence. ***Rhodes v. State***, 676 So.2d 275, 281 (Miss. 1996).

¶4. In spite of this highly deferential standard of review, this Court concludes that the evidence in the record is insufficient to convict Chapman of the robbery of Verda Bryan. The only evidence in this case which implicates Chapman is the identification of Chapman by Bryan at the police station the day after the robbery. The reliability of Bryan's identification is rendered highly suspect, however, by the fact that Officer Curry testified that Bryan failed to identify Chapman as the robber on at least three occasions shortly after the robbery.

¶5. In his testimony before the grand jury, Officer Curry had not mentioned Bryan's previous failures to identify Chapman on the day of the robbery. When questioned by the prosecutor regarding his failure to so testify at the grand jury, Officer Curry responded that "I didn't feel it was relevant for me to reveal it at that time." The prosecutor then appeared to suggest that Officer Curry might have fabricated his testimony in order to assist Chapman:

> Q: How long have you known David Lee Chapman ?
>
> A: All my life.
>
> Q: Did you go to school with him ?
>
> A: Yes, sir, I did.
>
> Q: Grow up with him ?
>
> A: Yes, Sir.
>
> Q: Play ball with him ?
>
> A: Yeah, yes, sir.
>
> Q: Friends with him ?
>
> A: I consider him a - - I don't have anything against him.

Officer Curry's testimony was corroborated, however, by the testimony of Larry Joe Robinson, who confirmed that Chapman had been in his presence when Bryan tentatively identified Robinson as the robber. Robinson testified that:

> A: Well, I was standing on the corner, and I was helping a friend clean some whitewalls on his tires, and Officer Curry and the guy that supposed to have got robbed, they pulled up in the driveway, and he told me to come to the car. He got out of the car and said, "Larry, come here, " and I asked him for what. I said I hadn't did anything. He said, "Come here," and he told me to peep over into the car. So, I stuck my head in the car, and he asked the guy if I was the one and he said no, I wasn't the one, and I asked him, "The one for what?" He said, "The guy just got robbed," and I told him, "You know I wasn't going to rob no one." ...
>
> Q: Okay. Was the Defendant over there, Davie Chapman, was he anywhere around during that time ?
>
> A: He was standing right there in the yard with us.

¶6. Officer Curry's and Robinson's testimony regarding Bryan's failed identifications of Chapman also appears to have been tacitly corroborated by Bryan himself. Bryan testified on cross-examination that:

> Q: If you had seen those eyes, if you had seen this person earlier, do you think you could have identified him ?
>
> A: I don't know really, because of the state I was in.
>
> Q: Okay, So after you had time to sit back and think about it, you were able to decide that this person was the one ?
>
> A: Yes, sir. After I saw him all night in my sleep, I recognized him.

Considered as a whole, there appears to be little if any doubt that Bryan did in fact fail to identify Chapman as the suspect shortly after the robbery.

¶7. In addition, there is another piece of evidence in the present case which casts further doubt on the prosecution's theory that Chapman robbed Bryan. When questioned about the clothes worn by the robber, Bryan testified that:

> A: The only thing I remember was he had on what I would call a sports jacket.
>
> Q: Okay.
>
> A: Brown and yellow plaid, frayed sleeves. I do remember that.
>
> Q: You are talking about a sportscoat ?
>
> A: Yes, sir.
>
> Q: Similar to what I am wearing ?
>
> A: Yes, sir.

Officer Curry, Larry Joe Humphrey, and Chapman's mother all testified, however, that Chapman was wearing a green camouflage jacket on the morning of the robbery, and this jacket was produced in open court. When shown the camouflage jacket, Officer Curry testified that "that's the one Davie Lee had on" when he was observed mere minutes after the robbery. In order to accept the prosecution's theory, one must assume that Chapman discarded the plaid sports coat which Bryan observed in the minutes after the robbery. This sports coat was never recovered or otherwise accounted for, however, and the State's failure to offer any proof or explanation in this regard is damaging to an already weak case.

¶8. The State argued on summation that Chapman demonstrated a consciousness of guilt by telling Bryan at the police station that he was not the one who had robbed him. The prosecutor argued that:

> Well, the problem is that nobody had told this Defendant that anybody had been robbed. You will recall he was up there on some other business. I don't know what, but it wasn't about this robbery. Nobody had told him that there had been a robbery. Nobody had told him that Mr.

Bryan was the person who was robbed.

In the view of this Court, the State's argument is unpersuasive. As noted earlier, the record indicates that Chapman was present when Larry Joe Robinson was tentatively identified by Bryan as a possible suspect. Moreover, the robbery occurred within walking distance of Chapman's house, and Robinson testified that he was told by Officer Curry that Bryan had been robbed. Under these circumstances, it would be very surprising if Chapman had not learned that Bryan was the victim of a robbery by the time he was at the police station the next day. It is also unsurprising that Chapman would profess his innocence after he observed Bryan staring at him in an accusatory manner.

¶9. The fact that Bryan only identified Chapman after he was seen walking in the police station between two sheriff's deputies raises further doubts as to whether Bryan's identification of Chapman was a result of a conscious or unconscious bias against a party seen in police custody. Although Chapman does not raise Constitutional issues in this regard, this Court notes that the United States Supreme Court has held that unnecessarily suggestive identification proceedings may give rise to due process violations. *Stovall v. Denno*, 388 U.S. 293 (1967); *Simmons v. United States*, 390 U.S. 377 (1968). In *Neil v. Biggers*, 409 U.S. 188, 199 (1972), the Supreme Court held that the "central question" with regard to identifications was "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."

¶10. Disregarding the Constitutional issues which are not before this Court, this Court concludes that Bryan's repeated failures to identify Chapman when he was seen outside of police custody raises serious doubts about the reliability of his subsequent identification of Chapman at the police station. Further doubt is cast by the fact that, immediately after the robbery, Chapman allowed himself to be viewed on three separate occasions by Bryan and Officer Curry. It can be argued that Chapman did not intend to be seen by Bryan on the first occasion, but it is unusual that a party who has just robbed a victim would put himself in a position to be viewed by the victim on two additional occasions. Chapman's actions are, in the view of this Court, more consistent with those of a curious onlooker than with those of a person who has just committed a robbery.

¶11. After carefully reviewing the record, this Court concludes that, even considered in the light most favorable to the State, the evidence in the present case is insufficient to convince a reasonable jury of Chapman's guilt beyond a reasonable doubt. Virtually the only evidence in the State's entire case which implicates Chapman are Bryan's identifications of Chapman at the police station and in open court. This Court has little confidence in the reliability of these identifications, however, in light of the suggestive circumstances under which they were made and in light of Bryan's repeated failures to identify Chapman under less suggestive circumstances. Further reasonable doubt is provided by the fact that the robber wore a different jacket than that which Chapman was observed wearing immediately after the robbery and by the State's failure to offer any evidence or explanation in this regard.

¶12. Giving all reasonable inferences from the evidence to the State, this Court can nevertheless not conclude that the State met its burden of proving Chapman guilty beyond a reasonable doubt in the present case. See *Cunningham v. State*, 583 So.2d 960 (Miss. 1991); *Corbin v. State*, 585 So.2d 713 (Miss. 1991); *McQueen v. State*, 423 So.2d 800 (Miss. 1982); *Martin v. State*, 361 So.2d 68 (Miss. 1978); *Davenport v. State*, 144 Miss. 273, 109 So. 707 (1926). After carefully considering the

evidence in the record, this Court is left with abundant reasonable doubt that Davie Lee Chapman robbed Verda Bryan on the morning of January 30, 1996. This Court concludes that Chapman's motions for directed verdict or for a peremptory instruction of not guilty should have been granted, and the judge's ruling in denying these motions is hereby reversed.

¶13. **REVERSED AND APPELLANT DISCHARGED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. SMITH, J., NOT PARTICIPATING.**