GRIFFIS, J.,
for the Court.
¶ 1. Lamont Jackson, a/k/a Lamont De-mond Jackson, was convicted of armed carjacking. The trial court sentenced him to serve a term of ten years in the custody of the Mississippi Department of Corrections and ordered him to pay a $2,500 fine and court costs. Jackson appeals and ar *126 gues that: (1) the verdict is against the overwhelming weight of the evidence, (2) his attorney was ineffective for failing to object to certain evidence, and (3) the admission of that evidence was plain error. We find no error and affirm.
FACTS
¶ 2. In the early morning hours of July 21, 2002, Cheryl Cunningham, Tammy Nicholson Haley, and Nathaniel Fantroy were parked in a white Pontiac Firebird, in a driveway in Pascagoula. It was raining outside, and they remained in the car talking. Cunningham was in the driver seat, Haley was the front passenger, and Fantroy was in the back seat.
¶ 3. At about 2:15 a.m., a man approached the passenger door with a gun and ordered Haley and Fantroy out of the car. The perpetrator was described as a dark skinned black man in a black shirt. Another armed man approached the driver door and ordered Cunningham out of the car. He was a light skinned black man in a white shirt. The three occupants went into the house. The white-shirted man got in the driver’s seat, and the black-shirted man got in the passenger seat. They drove toward the nearby Navy base.
¶ 4. Officer Randy Nigard responded to the scene at 2:53 a.m. and interviewed Cunningham and Haley. At 3:14 a.m., Gautier Police Officer Vincent D. Nicholson spotted two vehicles crossing the Pas-cagoula Bridge on Highway 90. The first was a white Nissan Maxima, owned and driven by Jackson. He was a New Orleans resident and member of the Navy stationed in Pascagoula. The Firebird tailgated Jackson at fifty miles per hour. The Firebird had a “For Navy Use Only” license plate. Nicholson radioed for backup, and Officers Danny Sullover and Scott Hawkins responded.
¶ 5. Jackson turned north on Gautier-Vancleave Road, and the Firebird followed. The ears were in the right, northbound lane. When police tried to pull over the Firebird, it pulled into the left, northbound lane beside Jackson. The Fire-bird’s passenger window and Jackson’s driver window rolled down, and they talked. The Firebird sped off, and Nicholson and Sullover followed. Jackson pulled up to a gas pump at the Easy Serve Gas Station, and Hawkins followed.
¶ 6. Jackson was detained and arrested for driving without a license. He denied knowing who was driving the Firebird and consented to a search of his car. On the front passenger seat was a wet, black T-shirt with a white Reebok logo. He told officers he was wearing it earlier and got caught in the rain. He also told officers he had a gun, which was found in the trunk. The gun was a Ruger 9 millimeter, with a laser sight mounted below the barrel. All three victims later identified Jackson as the black-shirted carj acker.
¶ 7. As for the Firebird, it led police on a high speed chase westbound on I — 10. Police blew the tires out, and the car wrecked in the median. When police caught up with it, the car was abandoned. A black Lorcin 9 millimeter pistol, with a laser sight mounted below the barrel, was found inside, along with 9 millimeter ammunition. The Lorcin was stolen from the New Orleans Police Department.
¶ 8. At trial, the victims identified Jackson as the black-shirted carjacker. However, no one could identify the Reebok shirt. Jackson and Antonio Robinson testified Jackson was attending a party at Robinson’s home on the night in question. He lived two blocks away from the carjacking. They testified the party did not end until 3:00 a.m., at which time Jackson started for New Orleans. The jury delib *127 erated over two hours and returned a guilty verdict. Jackson appeals.
ANALYSIS

I. Is the verdict against the overwhelming weight of the evidence?

¶ 9. Jackson argues that the verdict is against the overwhelming weight of the evidence, because it is based on questionable eyewitness identification, confusion and coincidence. The State does not address this argument at all. It only argues the sufficiency of the evidence.
¶ 10. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The evidence is weighed in the light most favorable to the verdict. Id. The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Id. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 11. Where virtually the only evidence of guilt comes from a highly suspect or uncertain identification, the conviction is against the overwhelming weight of the evidence. Chapman v. State, 725 So.2d 744, 745(¶ 4) (Miss.1998) (highly suspect identification); Edwards v. State, 736 So.2d 475, 483(¶ 29) (Miss.Ct.App.1998) (uncertain identification). On the other hand, where “the testimony of the prosecu-trix ... is supported by other evidence, we have held that such conviction is not against the overwhelming weight of the evidence.” Riddle v. State, 413 So.2d 737, 739 (Miss.1982).
¶ 12. In Chapman, the supreme court reversed a robbery conviction, because “virtually the only evidence” was the victim’s unreliable identification. 725 So.2d at 747(¶ 11). One hour after the robbery, the victim failed to identify Chapman as the robber on three separate occasions. Id. at 744(¶ 2). It was not until the next day at the police station that the victim identified Chapman. Id. He was at the police station on an unrelated matter. Id. When he saw the victim staring, Chapman said he was not the robber. Id. The supreme court held the victim’s identification was highly suspect, because he failed to identify Chapman on three occasions shortly after the robbery. Id. Chapman was wearing different clothes than the robber. Id. at 747(¶ 11). Finally, Chapman’s statement was not evidence of guilt. Id. at 746(¶ 8). He was present when his friend was tentatively identified as the robber, and “it would be very surprising if Chapman had not learned that Bryan was the victim of a robbery_ It is also unsurprising that Chapman would profess his innocence after he observed Bryan staring at him in an accusatory manner.” Id.
¶ 13. Subsequently, this Court reversed and remanded a murder conviction where the only person who identified the defendant was not certain he was the perpetrator. Edwards, 736 So.2d at 483(¶ 29). The eyewitness said he “thought” or “believed” Edwards was the gunman. Id. at 481(¶ 24). On cross-examination, the eyewitness said he was not sure. Id. The only positive identification came through a hearsay statement in which Lakesha Thames said she overheard the eyewitness say Edwards “done shot that boy.” Id. at 482(¶26). The Court distinguished the issue as one of certainty, not credibility. Id. at 482(¶ 27). We held, “[i]f one witness expresses certainty in identification and is then impeached or *128 contrary evidence is introduced, that conflict is a matter for the jury to resolve.” Id. “If only one person makes the identification and there is no other evidence that adds to it, then if that witness himself is not convinced beyond a reasonable doubt, neither may be the jury.” Id. at 483(¶ 29). The only evidence that was left to identify Edwards was tenuous. Id. at 483(1131). “Edwards was in the vicinity of the crime.... So were other people. He also had on clothes similar to that worn by the [criminal]. The clothes were merely described as ‘dark’ and there was nothing distinctive about them.” Id. at 482(¶ 29). The prosecution never produced a weapon, motive, or any physical evidence linking Edwards to the crime. Id. at 484(¶ 32). No one saw Edwards with a gun. Id. “Uncorroborated by any other substantial evidence regarding a positive identification, the Thames testimony about what she heard Warren say is simply too slender a reed on which to support a conviction.” Id.
¶ 14. The supreme court distinguished Edwards in Brengettcy v. State, 794 So.2d 987, 997(1128) (Miss.2001). Brengettcy was accused of murder in a drive-by shooting. Id. at 991(¶ 4). One eyewitness positively identified Brengettcy as the shooter. Id. This was corroborated by three other eyewitnesses who identified Brengettcy as the person occupying the front passenger seat of the car, and other eyewitness testimony that the gunfire came from the front passenger seat. Id. The court noted that the eyewitnesses who positively saw Bren-gettcy, never vacillated in their identification. Id. at 997(¶ 28).
¶ 15. With these cases in mind, we turn to the weight of the evidence in this case. The evidence against Jackson consists of three eyewitness identifications, the Reebok shirt, the fact he was seen speaking with the driver of Firebird, his gun, the New Orleans gun, and the Navy tag. Further, he was in the vicinity of the site from where the car was stolen.
¶ 16. Not one witness could identify the Reebok shirt. Further, while both guns had mounted laser scopes, none of the victims described the guns in question as having this feature. At trial, they could not describe the guns’ color. Officer Randy Nigard testified that one of the victims had previously described both guns as silver. The Lorcin in the Firebird was black. There is no description of the color of Jackson’s Ruger.
¶ 17. As for the Navy tag, its probative value is too tenuous. The mere fact that Jackson was in the Navy is not enough to tie him to the stolen Navy tag. Indeed, Pascagoula is a Navy town. There is literally a fleet of people who could be incriminated by this tag. This evidence might be more probative if this case were set in Corinth, as opposed to Pascagoula.
¶ 18. The New Orleans connection is likewise tenuous, given the proximity. There was absolutely no physical evidence that linked Jackson to the Lorcin. The prosecutor argued, without objection, that because the Lorcin and Jackson were from New Orleans, he stole the Lorcin in New Orleans before he stole the car in Pasca-goula. There is no evidence to support this allegation of a prior bad act. The only thing the Lorcin’s origin could indicate is that the driver of the Firebird also was from New Orleans.
¶ 19. However, this brings us to the two key pieces of evidence — the identification and the words exchanged during the police chase. It was a dark, rainy night. Jackson had a mustache and goatee, which none of the victims described. Nevertheless, when presented with a photo lineup, all victims picked out Jackson, within a matter of seconds of viewing the lineup. It was disputed whether Haley and Cun *129 ningham performed their photo identifications together. However, Fantroy’s identification definitely was performed solo. Likewise, all three identified Jackson in court as the blaek-shirted earjacker.
¶ 20. Jackson does not argue that the identifications were inadmissible or that the photo lineup itself was unconstitutionally suggestive. Indeed, all six photos were of dark skinned, black males between the ages of twenty and thirty, with similarly shaped goatees. Jackson wore a blue tank top in the photo, while two of the other men in the photos wore black shirts.
¶ 21. Instead, he argues that the way the police officer phrased the question to the victims was unduly suggestive. Cunningham stated that they were asked “if there was anyone fitting the description.” Jackson believes the phrase “fits the description” was too vague. He maintains it did not invite the victims to pick out the actual earjacker but rather anyone who “fit” his description. First, all participants in the lineup fit relatively the same description. Secondly, the exact question posed to the victims was in dispute. Haley testified, “He said he wanted us to make sure that we got the right one, the one that came there that had the gun on me.” According to Haley, she and Cunningham picked out Jackson’s picture, “and said that was him.” Officer Jeff Pacey testified:
And I discussed with them what I wanted them to do. I wanted them to look at the photographs. Be careful and not just pick somebody out because they felt like they needed to; to take their time. They were under no pressure to look at it, and if they saw who it was that stole their car, you know, to point them out. If they didn’t know or if they were unsure, not to pick anybody.
Thus, the jury was presented with a dispute of fact to resolve. Even if they resolved it in favor of Cunningham’s testimony, they were still free to consider that in weighing the reliability of the three eyewitness identifications, made less than twelve hours after the carjacking. All three victims picked out Jackson in a matter of seconds and never wavered. All three were face to face with the black-shirted earjacker and had time to observe him.
¶ 22. As for the words exchanged during the police chase, the jury was given two different accounts. The police testified only one person was in the Firebird, and he and Jackson exchanged words. Jackson maintained that two unknown people were in the Firebird and were yelling at him, possibly for driving too slow. Once more, this was a dispute for the jury to resolve.
¶ 23. Given the identification testimony, we are not convinced that the verdict worked an unconscionable injustice. The eyewitnesses never vacillated, and their testimony is corroborated by Jackson’s conduct during the police chase. Pursuant to Brengettcy and Riddle, we must affirm the verdict as not being against the overwhelming weight of the evidence.

II. Was counsel ineffective when he failed to object to the admission of Jackson’s T-shirt and gun?

¶ 24. Jackson argues his trial counsel should have objected to the relevancy of his T-shirt and gun. Jackson believes the evidence would have been excluded, and the result of his trial would have been different. The State’s sole response is that there is “nothing in the record to suggest these arguments merit anything.”
¶25. Cunningham and Haley testified the earjacker wore a black shirt “with some writing on” it. Fantroy, however, *130 testified it was just a black shirt, with nothing special about it. They could not identify the Reebok shirt. Officer Scott Wilson identified it as the wet shirt he found on the front passenger seat of Jackson’s car. Jackson admitted he wore it that night.
¶26. Likewise, none of the victims could identify Jackson’s Ruger. They were only able to describe it as a handgun and could not describe the color. Additionally, the Lorcin found in the Firebird was black as opposed to silver. It was the only gun found in that car.
¶ 27. Constitutional issues are reviewed de novo. Thoms v. Thoms, 928 So.2d 852, 855(¶ 9) (Miss.2006). To prove ineffective assistance of counsel, Jackson must demonstrate that his counsel’s performance was deficient, and this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Jackson. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990).
¶ 28. To evaluate the deficiency prong of the Strickland analysis:
a court ... must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as of the time of counsel’s conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.
Strickland, 466 U.S. at 690, 104 S.Ct. 2052. There is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Id. at 694. This Court will not second guess counsel’s reasonable trial strategy. Hall v. State, 906 So.2d 34, 38(¶ 15) (Miss.Ct. App.2004).
¶ 29. To evaluate prejudice, “the defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
¶ 30. We find that Jackson failed to satisfy the deficiency prong of the Strickland analysis. First, the shirt and gun are relevant evidence, because he wore the shirt and had the gun that night. Both were similar to the limited descriptions the victims gave.
¶ 31. Secondly, failure to object in this case was reasonable trial strategy. As the record reflects, trial counsel’s strategy was to impeach the identifications. Each victim testified they did not recognize the Reebok shirt. As appellate counsel points out, Reebok is a readily recognizable logo, and not one of the witnesses included it in their description, nor could they identify it on the stand as the carjacker’s shirt. Furthermore, trial counsel’s cross-examination pointed out that none of the witnesses described the gun as having a mounted laser scope, as did Jackson’s gun. However, when asked to describe and identify Jackson’s gun, the officers testified that the laser scope was the distinctive feature which caused them to recognize it at trial. Trial counsel also had the arresting officers admit Jackson consented to the search of his car and volunteered the fact that he had a gun and had worn the Reebok shirt earlier. This was all probative of the fact that Jackson was not the carjacker, but rather a victim of confusion and misidentification.
¶ 32. This issue has no merit.

*131
III. Was the admission of Jackson’s T-shirt and gun plain error ?

¶ 33. In the alternative, Jackson avers that the admission of these exhibits constitutes plain error. He argues that the prosecution failed to link the shirt and Ruger to the crime in question; therefore, the admissibility of these items was plain error. The State responds that these were relevant, and there is no plain error.
¶34. A ti’ial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Fisher v. State, 690 So.2d 268, 274 (Miss.1996). A “defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal.” Foster v. State, 639 So.2d 1263, 1289 (Miss. 1994). Such error exists where it affects substantial rights of the defendant. Grubb v. State, 584 So.2d 786, 789 (Miss.1991). The plain error doctrine includes the review of errors that “seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
¶ 35. All relevant evidence is admissible unless otherwise provided. M.R.E. 402. Relevant evidence is any evidence which tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without that evidence. M.R.E. 401. “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403. Tools, weapons, and other physical evidence used or usable in the commission of a crime are admissible into evidence, provided they are relevant and not too remote. Bryant v. State, 850 So.2d 1130, 1134(¶ 12) (Miss.Ct.App.2002).
¶ 36. We find no error, much less plain error, in the admission of these two items. They were relevant to the issue of identity and were not too remote in space nor time. The shirt and gun were similar to the description given by the victims. Jackson admittedly wore the shirt and possessed the gun during the time in question. He and Robinson placed Jackson within two blocks of the site of the carjacking. He was caught with these items an hour after the carjacking, leaving Pascagoula.
¶ 37. Nevertheless, Jackson argues that the case of Walker v. State, 878 So.2d 913 (Miss.2004), mandates a plain error reversal. First, we note that Walker did not rely on plain error. Walker, unlike Jackson, raised the issue in the trial court. Id. at 915(¶ 9). Secondly, Walker is distinguishable. Walker was on trial for two counts of capital rape. Id. at 914(¶ 6). A towel soiled with semen was allowed into evidence. Id. at (¶ 7). The supreme court held the evidence was inadmissible for two reasons. Id. at 917 (¶¶ 22-23). The semen was never authenticated as Walker’s, even though the prosecution proffered it as his. Id. at 916(¶ 16). The court held, “Even though M.M. testified regarding how she retrieved the towel, the prosecution’s failure to positively connect the semen ... to Walker renders the towel inadmissible.” Id. at 915(¶ 15). Additionally, the alleged towel incident was too remote in time. Id. at 917(¶ 22). It was alleged that he had used it to clean himself after sexual battery of M.M. one year before the incident for which he was indicted. Id. The supreme court held that admission of the towel violated Rule 403, infringed upon Walker’s right to a fair trial, and served only to bolster testimony. Id. at 915-16(¶ 15).
¶ 38. This is not a ease where the evidence was too remote or not linked to the *132 defendant. Jackson admits he had these items on the night and in the neighborhood in question. Further, all that is needed to authenticate an item is “evidence sufficient to support a finding that the matter in question is what the proponent claims.” M.R.E. 901. Wilson and Jackson authenticated the shirt and gun as his items seized from his car one hour after the carjacking. Chain of custody was established.
¶ 39. This issue has no merit.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF ARMED CARJACKING AND SENTENCE TO SERVE A TERM OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $2,500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., LEE, P.J., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MYERS, P.J., CONCURS IN RESULT ONLY.